## HUDDLESTON v. STATE.

(Court of Criminal Appeals of Texas. April 30, 1913.)

1. Homicide (§ 135*) — Indictment — Means or Instrument.

Where the instrument used is not known to the grand jury or cannot be known by reasonable diligence, it is incumbent upon it to allege, in addition to the fact that it was a sharp or blunt instrument, that the further description was unknown, so that a count charging the killing of deceased by stabbing him "with some sharp instrument" was insufficient.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 215–223; Dec. Dig. § 135.*]

2. Homicide (§ 290*)—Trial—Instructions—Elements of Offense.

Where a count of an indictment for manslaughter did not sufficiently charge the offense in respect to the instrument used, it was error to authorize the jury to convict on that count.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 595; Dec. Dig. § 290.*]

3. Homicide (§ 142*)—Manslaughter—Sufficiency of Evidence.

Under a count for killing by stabbing with some sharp instrument, evidence failing to show that defendant, if he inflicted the wound, had any knife or sharp instrument, and showing only that he was engaged in the free for all fight during which the wound was inflicted, was insufficient to sustain a conviction.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 250–259; Dec. Dig. § 142.*]

4. Criminal Law (§ 784*)—Trial—Instruction on Circumstantial Evidence.

Where it appeared in a prosecution for murder that there had been no difficulty between defendant and deceased, that deceased approached a crowd, and that defendant in a general fight struck twice at deceased, but it was not shown who the others in the fight were or what kind of an instrument made the wound, or how the fighting came about, a failure to submit a charge on circumstantial evidence was error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1883–1888, 1922, 1960; Dec. Dig. § 784.*]

5. Homicide (§ 286*)—Instruments—Means by which Committed.

Where the instrument or means causing death was a matter of conjecture, where the depth of the wound inflicted near the heart of deceased was not shown, though a small pocket knife might have inflicted it, where there was no previous trouble between defendant and deceased, where the blow, if struck by defendant, was during a general fight, the court should have submitted Pen. Code 1911, art. 1147, providing that the instrument or means by which a homicide was committed should be considered in fixing the intent of the defendant, and that, if it was not likely to produce death, it should not be presumed that death was intended, unless such intention appeared from the manner in which it was used.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 586–591; Dec. Dig. § 286.*]

6. Homicide (§ 307*)—Trial—Instructions—Aggravated Assault.

Where the instrument or means causing death was a matter of conjecture, where the depth of the wound near the heart was not shown but might have been caused by a small pocket knife, where there was no previous trouble between defendant and deceased, and the wound, if inflicted by defendant, was during a general fight, a charge on aggravated assault should have been given.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 638–641; Dec. Dig. § 307.*]

7. Criminal Law (§ 857*)—Trial—Misconduct of Jury.

Where several of the jury, after retirement, discussed and talked about the defendant's failure to take the stand in his own behalf, contrary to the charge of the court, such misconduct was reversible error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2054, 2055; Dec. Dig. § 857.*]

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

George Huddleston was convicted of manslaughter, and he appeals. Reversed and remanded.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

McMurray & Gettys, of Decatur, for appellant. W. C. Shults, Co. Atty., and R. F. Spencer, Jr., Asst. Co. Atty., both of Decatur, and C. E. Lane, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. Appellant was convicted of manslaughter; his punishment being assessed at two years' confinement in the penitentiary.

[1] The indictment contains two counts; the first charging that appellant killed the deceased, Ben Motley, by stabbing him with a knife, and the second by stabbing him "with some sharp instrument." The second count of the indictment is attacked as being insufficient; that the simple allegation stabbing him with some sharp instrument is not a sufficient designation of the instrument with which the stabbing occurred. We are of the opinion this contention is correct. Where the instrument used is not known to the grand jury or cannot be obtained by reasonable diligence, then it is incumbent upon the grand jury to allege, in addition to the fact that it was a sharp instrument or blunt instrument, etc., a further description is unknown to the grand jury. We would suggest that, if it is thought necessary to prosecute this case further, another indictment be preferred charging the offense in conformity with the decisions and the well-understood jurisprudence. The above has been the rule in Texas, and many cases have been decided by this court involving this principle since the case of Jorasco v. State, 6 Tex. App. 238, as well as other cases involving this direct question. See Drye v. State, 14 Tex. App. 185; Jackson v. State, 34 Tex. Cr. R. 39, 28 S. W. 815.

[2, 3] It is also urged that the court erred in authorizing the jury to convict on the second count in the indictment. Taking up this matter as presented not only as above alleged but as here presented, connected with the charge, we would say that the court did err in submitting this, inasmuch as the indictment did not sufficiently charge the offense, and in response to another question growing out of this phase of the case would say that the conviction cannot be sustained predicated upon this count. The evidence fails to show that defendant, if he was the party who inflicted the wound, had a knife; in fact, no witness testified that he had a knife or any sharp instrument. The two witnesses relied upon by the state to connect the defendant with the transaction testified they did not see him have anything in his hand, and there were others engaged in the "free for all fight" that was going on at the time deceased received the wound from which he died. It would seem satisfactorily apparent that the jury did not convict under the first count, because no witness testified to the fact that appellant had a knife, even if he was the party who inflicted

the injury; and, if the jury concluded that he was the party who did the injury, they could only do so from the fact that he was engaged in the trouble in which the injury was inflicted.

[4] This brings us to another proposition urged by appellant, to wit, the court not only failed to charge on circumstantial evidence but refused to give a requested instruction submitting this theory of the law. We are of the opinion that, under the authorities, this proposition is correct. The evidence shows on the night of the trouble a social function and dance was being carried on at the home of the deceased. Appellant was a comparative stranger to deceased and his wife, and there had been no difficulty or unpleasant words or occurrences happening between appellant and the deceased prior to the tragedy. Deceased had had some trouble with another party, but appellant was in no way involved in that trouble. Appellant had danced one set with the wife of the deceased and had gone out of doors with one or two friends. Directly the deceased came out in company with a friend and walked out in front of the house through a gate, which was to the east of the house, and 10 or 12 steps into the public road. Off a short distance several parties were engaged in an angry altercation, and some of the witnesses say they were fighting. Nearby there was another crowd, but beyond those engaged in the mêlée. The state's witnesses put appellant with the crowd that was fighting; others put him with the other crowd. The deceased, hearing the altercation, became somewhat indignant from the fact it was going on at or near his residence, and remarked to the friend who was with him he would go down and stop it or make them leave, or some similar expression, further stating he would not permit such things to go on at his house or near his home. He went to where the crowd was, and the state's witnesses say the mêlée continued, and it appeared to one of the witnesses that all of the crowd which deceased approached jumped on and began fighting him. The state's testimony, without going into detail, is to the effect that appellant was with this crowd and struck two licks at the deceased, as the witnesses term it, striking at him "overhanded." It seems to have occurred this way: That while they were fighting one of the witnesses pulled off the man whom the other witness says was appellant; that before pulling him off he had struck one overhanded lick. Appellant or the man who was pulled off remarked, "Do not hold me, turn me loose," which the witness did, and appellant struck another overhanded lick. Directly deceased emerged from the crowd and either sat down or fell down and shortly afterwards died. None of the crowd actually engaged in this fight testified in the case, as we understand this record. Nothing was

said, except as above detailed. Who these people were, outside of the evidence above mentioned tending to show appellant was in the crowd, is not shown by the facts.

Appellant offered testimony to the effect that he was with the other crowd, not engaged in the trouble at all, and was about that time engaged with his friends in hitching up a buggy and immediately left. The two witnesses who testified for the state swear they saw nothing in the hands of appellant. He went home that night and was arrested the following day. Two doctors were called in immediately. One of them testified that he saw the wound but did not examine the body or the wound, just glanced at it; he describes the wound as being below the ribs. The other doctor says he did not examine the wound; he located it, and said it was at the apex of the heart. He says he did not examine the wound and did not know whether it went straight in or upward or downward, nor the depth of the wound. Deceased lived but a short time. He made no statement as to the difficulty. The only remark he is shown to have made immediately after being wounded was, "Oh Lordy!" or a similar expression. The jury perhaps may have been justified in believing from the evidence of the two state's witnesses that appellant did strike the deceased, inasmuch as he was "striking overhanded" at him. There were others engaged in the mêlée. The deceased had had some trouble with another party shortly prior to this difficulty. He had had no words or altercation or unpleasantness of any sort with appellant. If they were all engaged in a difficulty and fighting the deceased, as these two witnesses would indicate, then it is a matter of conjecture as to who used the instrument that produced the wound. How the difficulty came up between the parties is left entirely to conjecture. They were engaged in trouble when the deceased approached them with the expressed determination to make them leave. What he said or what brought about the trouble between himself and the crowd is not shown further than has been stated. It is therefore but an inference that appellant struck the deceased, and still further a presumption based upon that inference or presumption that he had a knife, and still another presumption that he used the knife or sharp instrument or whatever he had. This is from the state's case. The defendant's testimony excludes any connection with the trouble. The other parties engaged in the trouble had equal facilities with the appellant, if he was engaged in it, to do the cutting or inflict the injury. We think, therefore, under all the circumstances, a charge on circumstantial evidence should have been given, and the court erred in not giving the requested instruction.

[5, 6] Again it is urged that error was committed in not submitting article 1147 of the Revised Penal Code, which reads as follows: "The instrument or means by which a homicide is committed are to be taken into consideration in judging the intent of the party offending. If the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears." The instrument or the means used in this case is a matter of inference and conjecture. The depth of the wound is not shown. A small pocket knife could have inflicted the wound and brought about the killing, if, as one of the physicians said, it was near the apex of the heart. The intention of the party here is *not made evident that he intended to kill*, and the main basis of a presumption looking to that end is the fact that the party was stabbed near the heart. This would not necessarily show a deadly weapon or an evident intent to kill, under the circumstances of this case. There was no previous trouble between them. There is nothing to indicate, outside of the blow struck and injury inflicted, that there was any purpose to kill, and in a general fight, where several are engaged in it, fighting promiscuously or striking at random, it may have been just as probable a sudden stroke not definitely aimed for the purpose of killing. There is a long line of cases which require a charge under this statute to be given. There are too many conjectures and inferences in this case as to the weapon and the purposes and object of the parties to lead to the conclusion that the *intent to kill was evident*. The contention, therefore, that aggravated assault should have been submitted is sound.

[7] Another proposition is submitted for reversal, which we think is well taken. This grows out of the misconduct of the jury in their retirement in considering the case. During their retirement they discussed and talked about why the defendant did not take the stand and testify in his own behalf. It is deemed unnecessary to go into a detailed statement of this matter. On two or three occasions during the discussion of the case some juror would bring it up and talk about it, and the foreman would then read the charge of the court to them in which they were instructed not to discuss it. After reading it the first time, it came up again, and he again read the charge and warned them. Without discussing this farther, as it may not occur upon another trial, we are of opinion under the cases and proper construction of the statute the jury passed the legal limit in discussing appellant's failure to testify.

Again, one of the counsel in his discussion to the jury came dangerously near the line on the same proposition; that is, allusion to the failure of the defendant to testify. Upon another trial this should be avoided. It is unnecessary to discuss that matter, however,

here as it ought not to and doubtless will not occur upon another trial.

For the errors indicated, the judgment is reversed and the cause is remanded.