## Ray Dill v. The State.

No. 5552. Decided March 3, 1920.

**1.—Murder—School Teacher—Pupil—Rule Stated.**

Where, upon trial of murder and a conviction of manslaughter, the facts showed that deceased was a school teacher and defendant his pupil about fourteen years and a half of age; that the teacher concluded that defendant as his pupil needed correction and punishment and took him away from the school grounds to do so, it is held that he had a right to do

this and chastise him there instead of doing so at the school-house; but if the punishment passed beyond a moderate restraint and chastisement the defendant had the right of self-defense; especially if malice entered into the teacher's action.

## 2.—Same—Self-defense—Charge of Court—Standpoint of Defendant.

Where, upon trial of murder and a conviction of manslaughter, there was a conflict of testimony as to whether the deceased who was defendant's teacher, exceeded his authority in inflicting punishment when defendant stabbed him with a pocket knife, which resulted in death some days afterward, the court's charge on self-defense should have submitted the facts from the standpoint of the defendant and should have so instructed the jury, that if the defendant believed that deceased took him out there not to chastise him as a student for a violation of the rules of the school but out of revenge or to inflict unnecessary and immoderate punishment upon him in a cruel way, then defendant's right of self-defense inured to him from the circumstances as he saw the facts at the time and not how the jury viewed them at the trial.

## 3.—Same—Intent to Kill—Aggravated Assault.

Where, upon trial of murder and a conviction of manslaughter, the evidence showed that the instrument used was an ordinary pocket-knife and that defendant's testimony showed that he did not intend to kill the deceased but to prevent an attack upon him not within the right of the school teacher, the court should have given in charge to the jury articles 1147 and 1149, P. C., with reference to the use of means not in their nature calculated to produce death, as the instrument was not a deadly weapon *per se* and the use of it did not show evidently an intention to kill, and that under the circumstances the offense would not be higher than aggravated assault, although death resulted.

## 4.—Same—Juvenile—Statutes Construed—Place of Confinement.

Where, upon trial of murder and a conviction of manslaughter, the evidence showed that defendant was a boy of about fourteen years and six months of age he was within the juvenile law which authorized, if it did not require, in case of conviction, that he be sent to the reformatory or training school, and, while this was not presented at the trial the matter can be presented in the appellate court, the only question is whether this court could reform the judgment in this respect, and inasmuch as the case goes back for another trial, the attention of the trial court is hereby called to this matter. Following: McLaren v. State, 82 Texas Crim. Rep., 449, 199 S. W. Rep., 811, Ex parte Mathews, 38 Texas Crim. Rep., 617, and other cases.

Appeal from the District Court of Parker. Tried below before the Hon. F. O McKinsey, judge.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Hood & Shadle,* for appellant.—On question of intent to kill: Grant v. State, 56 Texas Crim. Rep., 411, 120 S. W. Rep., 481.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of teacher's right to punish: Hutton v. State, 23 Texas Crim. App., 386.

On question of charge on self-defense and defendant's standpoint: Jordan v. State, 10 Texas, 479; Boothe v. State, 4 Texas Crim. pp., 202; Davis v. State, 19 id., 201; Hart v. State, 21 id., 163.

On question of instrument used: Gatlin v. State, 5 Texas Crim. App., 531.

DAVIDSON, PRESIDING JUDGE.—Appellant was allotted a term of two years in the penitentiary for manslaughter.

The facts show deceased was a school teacher and appellant a pupil about fourteen and one-half years of age. The teacher concluded appellant had been sufficiently obstreperous to require punishment. Instead of punishing him in the school-house or upon the school grounds he took him off beyond these grounds in the edge of some woods or bushes. The State's theory was that deceased had a right to do this and to chastise him there instead of doing so at the school-house or grounds. Under the authorities we are inclined to agree that for the purpose of chastising, the school teacher may have had the right to carry him to a point beyond the school-house or school grounds. This conclusion would seem to be justified under the authorities. The statute authorizes the school teacher to punish moderately his pupils. If it passes beyond that and the punishment is immoderate, or for the purpose of revenge or is maliciously done, then the right does not exist, and the right of self-defense obtains. If deceased undertook to whip the boy in a way that showed revenge or malice, then the purview of the statute should forfeit his right of chastisement and the boy's right of self-defense became an issue in his favor. The evidence is not satisfactory upon this phase of the case. There is evidence, however, to the effect that the school teacher at the time had exceeded his authority and appellant was acting within his legal rights in resisting. The evidence shows that deceased was stabbed with a pocket-knife, one stab inflicted, and when the assault was renewed by the school teacher he was struck on the head with a rock. This was not of any particular force in the case. The serious question in it arose from the use of the pocket-knife which resulted in death some days afterwards. The wound seems not to have been thought fatal or necessarily so, but it did result in death. The conflict in the testimony it is not necessary to notice. The issue was raised which required charges whatever the lower court may have thought of it, or what this court might think. The jury was to pass on it viewed from the defendant's standpoint.

A charge on self-defense was given to which exception was reserved, and we think correctly. The court submitted the theory of self-defense in its application to the facts as follows:

"The deceased, George Cooper, as a teacher, had the legal right of moderate restraint or correction over the defendant, and had

the right to inflict moderate corporal punishment to enforce obe-
dience of any reasonable rule, regulation or demand made by said
deceased in the conduct of the school at the time in question.

"So, if you believe from the evidence that on the occasion in
question, the deceased, George Cooper, conducted or accompanied
the defendant from the school-house and grounds to the point where
the difficulty between them is alleged to have occurred, and if you
believe the deceased was inflicting or was about to inflict corporal
punishment upon the defendant, and that such punishment was
moderate and that in so doing the deceased was exercising moderate
restraint or correction over the defendant as a pupil, then and in
such case, and in event you so believe from the evidence beyond a
reasonable doubt, I instruct you that you will disregard the defend-
ant's plea of self-defense, as under such circumstances he would
have no lawful right to cut or stab deceased.

"On the other hand, a teacher has no right to inflict excessive or
immoderate punishment upon a pupil, or to inflict punishment upon
a pupil merely for the purpose of gratifying the passion of anger
or resentment. So if you believe from the evidence that the de-
ceased, in escorting the defendant to the place where the difficulty
occurred, or in inflicting or attempting to inflict corporal punish-
ment upon the defendant, if he did so, was doing so merely for the
purpose of gratifying his anger," etc., or if they had a reasonable
doubt, the defendant would have the right to act in self-defense."

The objection to the above charges is based upon the ground
that same presented the case not from the standpoint of defendant
but that of the jury. We think this exception is well taken. It is
not what the jury might think of it in the light of all events and
circumstances, but it is the light in which it presented itself to de-
fendant at the time it occurred. If defendant so believed his
rights were the same whether the jury believed it or not as viewed
by them in the light of subsequent events. The case must be
viewed from defendant's standpoint and what prompted him to
act at the time that he did act. If he believed that deceased took him
out there not to chastise him as a student for a violation of the
rules of the school, but out of revenge or to inflict unnecessary and
immoderate punishment upon him in a cruel way, then appellant's
right of self-defense did inure and as viewed from the circumstances
as he saw the facts, at the time and not how the jury viewed them
at the trial. We think the exception to the court's charge is well
taken.

The court also instructed the jury that they could not convict
of manslaughter unless they should believe from the evidence be-
yond a reasonable doubt that defendant at the time intended to
kill deceased, George Cooper, and unless they should so believe they
would acquit of manslaughter; "and, in connection with other
facts and circumstances in evidence, the means or instrument by

which the homicide was committed are to be taken into considera-
tion in judging of the intent of the defendant; if the instrument
or instruments used were not likely to produce death, it is not to
be presumed that death was designed, unless, from the manner used,
such intention evidently appears.'' This is the court's predicate for
a charge on aggravated assault. Various exceptions were urged
to this, and we think some of them are well taken. The quoted
charge submitting the issue of aggravated assault was general in
expression. Article 1147 of the Penal Code provides: ''The instru-
ment or means by which a homicide is committed are to be taken
into consideration in judging of the intent of the party offending;
if the instrument be one not likely to produce death, it is not to
be presumed that death was designed, unless, from the manner in
which it was used, such intention evidently appears.'' Appellant's
evidence shows he did not intend to kill; he used an ordinary
pocket-knife, and to prevent an attack not within the right of the
school teacher. Even if the accused resented the attack of the
school teacher and his whipping or threatened whipping, and used
his pocket-knife when he may not have been authorized to do so,
while it might not be perfect self-defense, still it might relieve
under the circumstances from a conviction for a felony. The in-
strument used was one not likely to produce death under ordinary
circumstances; it was not a deadly weapon *per se.* If the use of it
in the manner in which it was used did not show evidently an in-
tention to kill, then the law excludes the idea that he did intend to
kill. There would be no presumption of death under such cir-
cumstances, and the court should so have charged the jury. Under
such circumstances, the offense would not be higher than aggravated
assault, although death did result. If there was no intent to kill
in fact, and the means used were such that ordinarily would not
produce death, such facts cannot be taken to show an intent to kill
unless that intention evidently appears, and from the weapon and
manner of its use.

Attention is also called to Article 1410, P. C., which provides:
''Where a homicide occurs under the influence of sudden passion,
but by the use of means not in their nature calculated to produce
death, the person killing is not deemed guilty of the homicide, un-
less it appear that there was an intention to kill, but the party
from whose act the death resulted may be prosecuted for and
convicted of any grade of assault and battery.'' The question of
sudden passion was in the case. The means used were not in their
nature ordinarily calculated to produce death, same being a pocket-
knife. Under such circumstances the law presumes he is not
guilty of homicide unless it should appear that there was an in-
tention to kill. The intention to kill must be drawn for the State
in this case from the facts occurring at the time and precedent facts
that were in evidence. If defendant intended to kill and used suit-

able means to carry out that purpose, the presumption would obtain, so far as the jury was concerned, that he did, for this would be viewing it from his standpoint, but his view is to the effect and his whole theory of the case was that he did not intend to kill, but that he did not intend to take the serious thrashing impending, and that he used his pocket-knife not for the purpose of killing but to relieve himself of the situation. These two articles, 1147 and 1149, should have been given in charge to the jury, and to the mind of the writer were rather controlling legal phases of the case.

There is another question suggested claimed to be of fundamental nature. The evidence shows, it seems without question, that appellant was a boy about fourteen years and six months of age. Therefore, he was within the juvenile law which authorizes, if not requires in case of conviction, that he be sent to the reformatory or training school. This was not submitted to the jury by the court and seems not to have been raised in the trial court. It is suggested here, however, as a fundamental proposition for reversal. We are of opinion that appellant, under Articles 5229 and 5231, Revised Civil Statutes, as revised by the acts of the First Called Session of the Thirty-third Legislature, pages 7 and 8, was entitled, if convicted for a term of years of less than five, to be sent to the reformatory instead of the penitentiary. His punishment was assessed at two years. Article 5231, *supra,* as revised, provides he cannot be sent to the penitentiary unless the punishment is in excess of five years, or rather that the juvenile must be sent to the reformatory if his punishment is five years or less. Under the view taken by this court in the decisions in McLaren v. State, 82 Texas Crim. Rep., 449, 199 S. W. Rep., 811, and Slade v. State, 85 Texas Crim. Rep., 358, 212 S. W. Rep., 661, and the revision of the juvenile Act as above cited, appellant was entitled, if convicted and his punishment assessed under five years, to commitment to the training school and not to the penitentiary. It might be, without deciding that question definitely, however, within the authority of this court to reform the judgment in accordance with this law and so make the judgment and sentence as to place him in the reformatory for two years instead of the penitentiary. Without definitely deciding that question in the present case, at it goes back for another trial, we call attention of the trial court to this matter. It may be under the authority of Ex parte Mathews, 38 Texas Crim. Rep., 617, that this court would have authority to reform this judgment to conform to the legislative enactment.

For the errors indicated, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*