FLOYD INGLE v. THE STATE.

No. 8882. Delivered April 15, 1925.

1.—Assault to Murder—Charge of Court—Instrument Used.

Where the evidence disclosed an assault made with a knife, which is not *per se* a deadly weapon, and no proof was offered as to the size of the knife, or that it was a deadly weapon in the manner of its use, it was error to fail to charge the law of Article 1147 P. C; following Boaz v. State, and other cases cited.

2.—Same—Charge of Court—Intent to Kill.

A specific intent to kill being one of the essential elements of an assault to murder, a failure to submit this issue in the charge of the court was error, the evidence in the case not disclosing that the knife used, or the manner of its use evidenced an intent on the part of appellant to kill; following Martinez v. State, 35 Tex. Crim. App. 386 and other cases cited.

Appeal from the District Court of Sabine County. Tried below before the Hon. V. H. Stark, Judge.

Appeal from a conviction of an assault to murder; penalty, two years in the penitentiary.

The opinion states the case.

*Minton & Lewis,* of Hemphill, for appellant.

*Tom Garrard, State's* Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE.—Conviction is for assault with intent to murder one Johnnie Pearson. Punishment is two years in the penitentiary.

The evidence covers some fifty pages in the statement of facts but may be condensed in very short space. The difficulty occurred in a restaurant which was being operated by defendant's aunt. He and his wife had gone to the restaurant a short time before the difficulty for the purpose of aiding the lady who was conducting it. Pearson's evidence is to the effect that while he was in the restaurant defendant said his wife was in the back of the restaurant and that he (Pearson) could not be cursing in there under those circumstances. Pearson denied that he was cursing at all. He says he started to the front of the restaurant, that defendant overtook him, caught him by the shoulder, wheeled him partly around and stabbed him with a knife. Other witnesses testified to seeing a blow struck by defendant but saw no knife in his hand. Neither Pearson nor any other witness undertakes to give any description of the knife used. The defensive evidence is to the effect that Pearson was drunk or drinking; that he was in the restaurant using vile and indecent language. Some of the female witnesses declined to repeat the language on account of its vulgarity. The witnesses for defendant testified that Pearson had a knife in his hand, but that defendant had none; that when defendant remonstrated with Pearson about his language he threatened to cut defendant and made a "rake" at him with the knife; that defendant grabbed Pearson, wheeled him around and shoved him towards the door, and that Pearson staggered or fell against the door facing or ice box, leaving the inference that he was cut with his own knife. The only description of the wound inflicted comes from the doctor. He said it was a stab wound over the heart; that he did not know how deep it was as he never probed it, but that in his opinion it went into the hollow; that it was a straight stab wound about 3/4 of an inch or 1 inch in size, that there was little bleeding externally, but that Pearson appeared to be suffering from internal hemorrhage when witness saw him. Pearson was in bed some three weeks.

We think it unnecessary to discuss but one question raised. Article 1147, P. C. provides that:

"The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending; if the instrument be one not likely to produce death, it

is not to be presumed that death was designed unless, from the manner in which it was used, such intention evidently appears.''

The Court omitted from his charge any reference to or application of this statute. It is contended that in the absence of any description of the knife claimed to have been used by defendant that such statute should have been given in charge to the jury. There was no exception to the charge because of the omission but defendant asked a special charge which embraced the article in question. (Boaz v. State, 89 Tex. Cr. R 524, 231 S. W. 790; Parker v. State, Tex. Cr. R.——, 261 S. W. 782; Bell v. State, 268 S. W. 168.) The only reference in the court's charge to any presumption is couched in this language:

''The test or criterion to guide you in passing upon the issue of assault with intent to murder in this case is as follows:—If it appears from the evidence that had death resulted from the act committed by the defendant, if any, he would have been guilty of murder, then in such case the assault, if any, is deemed to have been made with that intent. In other words, the assault, if any, must have been made with a calm and deliberate mind and formed design to unlawfully kill; and unless the evidence satisfies the mind of the jury beyond a reasonable doubt that the foregoing requirements of the law have been met, the charge of assault to murder against the defendant can not be sustained, and in such case he is entitled to an acquittal of said charge.''

This charge was not excepted to but it must be borne in mind in considering the effect of refusing the special charge requested. From the charge quoted the jury in effect told that if death had resulted and defendant would have been guilty of murder, the presumption would be that the assault was made with intent to commit murder, regardless of the character of weapon used. Counsel for defendant has presented the matter so convincingly in his brief that we quote thereform in part as follows:

''We understand it to be elementary that there can be no assault with intent to murder in the absence of an intent to kill. The case at bar being one of conviction for assault with intent to murder resting upon evidence that the injury was inflicted with a knife, the question of the intent of the accused was one of the most vital and material questions to be passed upon by the jury. If appellant assaulted and cut Pearson with a knife at all, then the question of the *intent* of appellant was a question of the highest materiality, since the question of *intent* would be a controlling question as to whether there was an intent to murder. Pearson, the alleged injured party, was the only witness who testified that appellant had or used any knife during the difficulty, his testimony, in substance, being merely that appellant struck his knife in him and then ran back into the bed room. Neither

Pearson or any other witness attempted to give any description whatever of the knife, if any, used by appellant during the difficulty. There is no testimony from Pearson or anybody else as to the size or kind of knife used or as to the length of the blade. Pearson received only one wound. It is shown that the wound on Pearson was what is called a 'stab wound', the length of the gash or incision on the skin being about ½ or ¾ of an inch or 1 inch long, but there is no testimony as to the depth of the wound nor as to whether it was a dangerous wound or one likely to produce death. The only testimony as to the location, nature and extent of Pearson's wound was by Dr. Morgan, who testified that he found on Pearson a 'stab wound,' made by a knife or some other sharp instrument, which was about ½ or ¾ or one inch long and was located slightly to the left of the center of the chest or breast and about the fifth rib and above the heart, and that he did not probe this wound and did not know whether it went to the 'hollow' or not. but was of the opinion that it did.

"If the jury believed appellant cut Pearson, then it became their province to pass upon the vital question as to whether or not appellant intended to kill Pearson. To guide them in passing upon this important question the jury should have been given an instruction emboding the law as embraced in Art. 1147, of the Penal Code. This was not done. The Court gave the jury no instructions whatever on the question of deadly weapons or on the question of the kind of weapon used and the manner of its use, or on the question of the intent of the accused. The jury was left without any criterion to guide them in passing upon these vital matters."

Defendant's contention is supported by the following authorities which we do not review, but their application to the present question is pertinent. Martinez v. State, 35 Tex. Cr. R. 386, 33 S. W. 970; Garrett v. State, 82 Tex. Cr. R. 64, 198 S. W. 308; Huddleston v. State, 70 Tex. Cr. R. 260, 156 S. W. 1168; Mason v. State,——, Tex. Cr. Rep., ——, 255 S. W. 986; Dill v. State, 87 Tex. Cr. R. 49, 219 S. W. 481; Hollman v. State, 85 Tex. Cr. R. 371, 212 S. W. 633.

Our state's attorney has confessed error on account of the omission from the charge of an application of Art. 1147, P. C. under the facts in the present case. We are in accord with his views relative to the matter. The charge given in our opinion intensifies the necessity for an instruction under Art. 1147.

Another question was raised upon motion for new trial claiming misconduct of the jury in considering the failure of defendant to testify. It being necessary in the view we take of the case to order a reversal because of the other question discussed we pretermit any

further reference to the other matter as it will not likely occur upon another trial. ·

For the reasons heretofore given the judgment is reversed and the cause remanded.

*Reversed and remanded.*