Douglas WARE, a Minor Represented by his Father, Marshal Ware, Roderick Oliver, a Minor Represented by his Father, Andrew Oliver

v.

Nolan ESTES, Superintendent of the Dallas Public Schools, et al.

Civ. A. No. CA 3-4147-C.

United States District Court,
N. D. Texas,
Dallas Division.

June 4, 1971.

Marks, Time & Aranson, by Fred Time, Dallas, Tex., for plaintiffs.

Franklin E. Spafford and Warren Whitham, Dallas, Tex., for defendants.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

In this suit the Court is called upon to resolve another conflict between the Constitution and the campus. The plaintiffs seek to restrain the defendants from administering corporal punishment in the Dallas Independent School District without the prior permission of the parent or student on the

grounds that it violates rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. The cause is dismissed because the claims are not substantial.

■ The plaintiffs here undertake to represent a class consisting of all students and/or parents of students or those who may become parents or students in the Dallas Independent School District who are opposed to the use of corporal punishment as a method of discipline. The Court finds that this suit has been properly brought as a class action under Fed.R.Civ.P. 23(b).

According to the rules and policy of the Dallas Independent School District,

"Principals are authorized to administer any reasonable punishment, including detention, corporal punishment, suspension for a period not to exceed ten school days at one time, or recommendation for expulsion from school."

The principal may delegate any of these duties to the assistant principal. The teacher is limited in his (her) use of corporal punishment.

"Despite the best efforts of a teacher, there are students who cannot or will not control themselves and repeatedly disrupt the school program. These pupils are in serious need of guidance in progressing from the need for external controls to self-discipline and should be referred to the Pupil Personnel Committee for study. In the event the Committee determines that corporal punishment should be administered by the teacher it will be administered in the presence of an adult witness after receiving written permission from the child's parent."

After any corporal punishment has been administered, the principal is required to file a report with the assistant to the Associate Superintendent for Instruction.

The plaintiffs charge that any corporal punishment administered without parental or student consent deprives them of their rights to due process under the Fourteenth Amendment because any utilization of corporal punishment is arbitrary, capricious and unrelated to any legitimate educational purpose. They also charge that this corporal punishment, on its face, constitutes cruel and unusual punishment in violation of the Eighth Amendment as applied to the States through the Fourteenth Amendment.

The evidence has shown that corporal punishment is usually administered by hitting the student on his buttocks one or several times with a paddle. The paddle is a piece of wood about 2 feet long, $\frac{1}{4}$ to $\frac{1}{2}$ inches thick, and 6 inches wide. There have also been incidents where the punishment has been administered with a tennis shoe. Plaintiffs have introduced testimony showing that corporal punishment has been administered by teachers without parental permission and even after permission has been denied by the parent. One of the plaintiffs, Roderick Oliver, was knocked unconscious by an Assistant Principal when he allegedly directed an obscenity at the administrator.[1]

■ From the evidence presented, the Court has no doubt that the practice of corporal punishment has been abused by some of the seven thousand odd teachers in the Dallas Independent School District. This does not, however, show that the policy itself is unconstitutional.

■ Under the doctrine of Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1922), the state cannot unreasonably interfere with the liberty of parents and guardians to direct the upbringing and education of children under their control. These parental rights are not beyond limitation. Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645, 652 (1943). In order for a deprivation of due process under the Fourteenth Amendment to occur, the rules and poli-

[1]. That assistant principal was suspended from duties for several months and is now facing a criminal charge for assault upon a minor.

cies of the school district must bear "no reasonable relation to some purpose within the competency of the State." Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070, 1076 (1924).

According to the testimony, it cannot be said that the Dallas Independent School District's policy on the use of corporal punishment bears no reasonable relation to some purpose within the competency of the state in its educational function. Dr. David Gil, an expert in education and social policy, testified that according to tests and studies he conducted there was a higher rate of delinquency among those children exposed to physical discipline than there was among children who were not physically chastised. It was his opinion that corporal punishment is always detrimental to a child's development. Dr. Robert Dane, an assistant professor of psychology at a nearby medical school, testified that there was evidence to show that corporal punishment makes it difficult for a child to develop; however, he also said that there was evidence to the effect that corporal punishment may be helpful to some children in the long run but not for the majority. Dr. Nolan Estes, Superintendent of the Dallas Independent School District, testified that the District's policy on corporal punishment was adopted after a conference with Professor B. F. Skinner of Harvard University, a recognized authority on child and educational psychology. Dr. Estes stated that the District's policy on corporal punishment reflects the philosophy of Dr. Skinner, i. e., in some cases corporal punishment will be helpful.

Dr. Estes testified further that it was the District's policy that corporal punishment be sparingly used and only as a last resort. For this reason, it has to be recommended by a committee and approved by the parent before a teacher can utilize it. He stated that these prerequisites on the use of corporal punishment are not imposed upon the principal or assistant principal because he has more resources at his disposal to find

out about the behavior and problems of the child than does the teacher. With this in mind, it is then left up to his professional judgment as to what he thinks is the best course of action. Dr. Estes said that this policy on corporal punishment was recommended to him also by the principals and the classroom teachers as the best interim measure at this time in light of the ultimate goal of complete self-discipline and individual education for the child.

█ █ It is not within this Court's function, or individual competence, to pass judgment upon the merits of corporal punishment as an educational tool or a means of discipline. The wisdom of the policy is not the Court's concern. The only judgment made is that the evidence has not shown this policy to be arbitrary, capricious, unreasonable or wholly unrelated to the competency of the state in determining its educational policy.

█ The plaintiffs have cited no authority for their allegation that they are somehow being denied due process except for the case of Murphy v. Kerrigan, CA No. 69–1174–W (D.Mass.1970). That case was a consent decree whereby both parties agreed that corporal punishment would be banned in the Boston Public Schools so long as the current Boston School Committee is in office. Being a consent decree, it has little, if any, precedential value. Other than the *Meyer* and *Pierce* cases, wherein the rights of the parents are subject to the reasonable regulations of the state, the Court knows of no such constitutional right.

The parents in the case of Cornwell v. State Board of Education, 314 F.Supp. 340 (D.Md.1969) aff'd 428 F.2d 471 (4th Cir. 1970), cert. denied, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246, made a similar claim to that made by the parents in this case, i. e., that it was within their rights as parents to teach their children about sexual matters in their own homes and that this exclusive right would prohibit the teaching of sex in the

**660**

schools. The law was found to be a valid and reasonable public health measure which outweighed claims based upon religious freedom and the right of parental control. Similarly, the judgment of the school board in the case at bar, having been found to be not unreasonable, outweighs any claims based upon parental rights.

While the School District here is certainly not compelled to use corporal punishment, they are allowed to use it by Texas Statute. Tex.Pen.Code Ann. art. 1142 (1961) immunizes teachers from assault and battery charges in the exercise of the right of moderate restraint given by law to "the teacher over the scholar" as well as "to the parent over the child." This statute has been construed as authorizing the school teacher to inflict moderate corporal punishment upon a pupil. Prendergast v. Masterson, 196 S.W. 246, 247 (Tex.Civ.App. Texarkana 1917, no writ) and Dill v. State, 87 Tex.Cr.R. 49, 219 S.W. 481, 482 (1920).

> "The legislature [can] properly conclude that parents and others, *teachers for example*, who have this primary responsibility for children's well-being are entitled to the support of laws designed to aid discharge of that responsibility." [Emphasis added]. Ginsberg v. New York, 390 U.S. 629, 639, 88 S.Ct. 1274, 1280, 20 L.Ed.2d 195, 204 (1968).

The Court does not find that corporal punishment as authorized by the state law and the rules of the Dallas Independent School District amounts to cruel and unusual punishment. It must be pointed out in this context that if the corporal punishment is unreasonable or excessive, it is no longer lawful and the perpetrator of it may be criminally and civilly liable. The law and policy do not sanction child abuse.

In closing this opinion, the Court feels compelled to utter a general precept in light of the many cases it has had to entertain in the recent past embodying allegations of constitutional violations by the local school district. The following quote will succinctly and accurately describe the Court's attitude with respect to these cases.

> "Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. * * * By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228, 234 (1968).

Plaintiffs' complaint is hereby dismissed.