Argued January 31, affirmed March 26, petition for rehearing denied April 19, petition for review denied July 3, 1973

# SIMMS, *Appellant, v.* SCHOOL DISTRICT NO. 1, MULTNOMAH COUNTY ET AL, *Respondents.*

508 P2d 236

120

*Keith Burns,* Portland, argued the cause for appellant. With him on the briefs was Jane Edwards, Portland.

*Edward H. Warren,* Portland, argued the cause for respondent School District No. 1. *David C. Landis,* Portland, argued the cause for respondent Weitz. With them on the brief were Gearin, Landis & Aebi and Hershiser, Mitchell & Warren, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

The plaintiff, Richard Simms, a 14-year-old student at Sabin School in Portland, brought action for

assault and battery against the District and one of its teachers, Marvin Weitz, alleging that he was wantonly shoved into a door and glass window therein by defendant Weitz. As a result he alleged the window broke, resulting in injuries to his arm. The defendants denied the allegations and by answer affirmatively alleged that the injury occurred while plaintiff was being removed from a classroom by reasonable force, necessitated by the plaintiff's disruptive behavior therein. The plaintiff demurred to the affirmative defense. The court overruled the demurrer. The case was then tried to a jury, which returned a verdict in favor of both defendants. Plaintiff appeals, asserting errors respecting both the giving and refusal to give certain instructions to the jury, and also concerning the admission of a written statement made by the defendant Weitz to the school principal the day of the incident.

A brief summary of the facts is necessary to an understanding of the issues. In view of the jury's verdict, we review them in the light most favorable to the defendants.

Sabin School in the city of Portland is what is known as a "model school" and received state funds because it was in a disadvantaged area. Defendant School District No. 1 paid the teachers there $500 or $1,000, depending on their experience, more than teachers at other schools in order to encourage them to teach there. The plaintiff had a poor record as a student. His achievement level was low and he had had difficulty in keeping up with his class. He had had previous difficulties for skipping school, fighting and staying home. He had failed to complete his work assignments. As a result he had been removed from the football team.

Marvin Weitz was plaintiff's eighth grade teacher in Black History. On the day of the incident, September 30, 1970, the class had viewed some films concerning which the students were required to take notes. After viewing the films they were to write a summary using the notes they had taken.

Defendant Weitz testified:

"Richard was not doing this assignment, and he was arguing with Gwynn Peters after a game they call 'a dozen', where you insult each other's mother. I had asked him several times to be quiet. After the second or third time, he continued talking. Gwynn Peters stated to me, 'He's talking again.' At that point, he told her to, something like 'Shut up, horse face', or something like that. So, I asked him to leave the room.

"*   *   *   *   *

"When I asked him to leave the room, he made a general statement to his friends that, 'I don't have to do what this mother-fucker says.'

"So, I said, 'Out', and he continued sitting in his seat. So, I left my desk. I headed down the aisle toward his desk and, at this point, he stood up, but he made no move to leave. I took him by the arm to turn him around. He jumped back and he says, 'I can walk myself.' I says, 'I know you can, but you are not. Come on.' I took his arm again and he started swinging.

"At this point, I clamped his arm to his side. I had him from behind. I was heading toward the door. The door was shut. I got to the door, I shoved him and reached to grab the knob, so I could get him out in one push.

"When I released his arm, he swung it up. It went through the window. We went out into the hall. I noticed that his arm was bleeding and cut.
*   *   *"

There was testimony also that during the time the teacher was physically ejecting Richard from the classroom he was "jumping up and down, he kicked, flaying his feet, trying to get loose."

■ The assignments of error relating to an instruction given[1] the jury on the one hand and the refusal[2] to give others raise basically the same question: Can a teacher use reasonable force to remove a disruptive child from a classroom? The plaintiff contends that the teacher may not. The defendants assert that he may. Plaintiff contends such an act constitutes corporal punishment,[3] which, he asserts, is forbidden by the Constitution, sound educational policy, statute, and

---

[1] From court's Instructions:

"A teacher is not justified to engage in wanton misconduct in ejecting a disruptive student. A teacher, however, does have responsibility for the discipline in his classroom, and in school, for the progress and the conduct and the deportment of the pupils. It is a school teacher's duty to maintain good order, require students to perform their duties. To enable him to discharge such a duty effectually, he must necessarily have the power to enforce prompt obedience to his lawful demands. For this reason, under proper circumstances, he may use reasonable force to evict a disruptive student.

"* * * * *

"What is 'reasonable' would be a determination. That is where the jury comes in, taking into consideration all of the circumstances existing at the time and place in question and the individuals involved."

[2] From Plaintiff's Requested Instruction No. 3:

"Defendant has admitted at trial he intended to take hold of plaintiff and propel him towards the door. He has defended this act on the basis that plaintiff was disruptive in his class.

"You are instructed this is no defense. Under no circumstances except self defense or the defense of others may a teacher use physical force against a student."

[3] In the view we take of this case, we do not reach the question whether the term "corporal punishment" embraces conduct of the kind here charged, or whether it is limited to the wilful infliction for disciplinary purposes of bodily punishment for past behavior. No opinion is expressed thereon.

defendant School District policy. Plaintiff urges that the use of force by the teacher is permitted only in "self defense or the defense of others." (See n 2.)

The annotation at 43 ALR2d 469, 471-72 (1955), discusses at length the teacher's civil liability for administering corporal punishment to pupils. It summarizes the rule:

> "It is a well-established rule of the law of torts that a teacher is immune from liability for physical punishment, reasonable in degree, administered to a pupil. The teacher is held (and in some jurisdictions is stated by statute) to stand in loco parentis, and to share the parent's right to obtain obedience to reasonable commands by force.
>
> "But a teacher's right to use physical punishment is a limited one. His immunity from liability in damages requires that the evidence show that the punishment administered was reasonable, and such a showing requires consideration of the nature of the punishment itself, the nature of the pupil's misconduct which gave rise to the punishment, the age and physical condition of the pupil, and the teacher's motive in inflicting the punishment. * * *"

In Note, *Right of a Teacher to Administer Corporal Punishment to a Student,* 5 Washburn L Rev 75, 76, 78 (1965), it is stated:

> "At common law the teacher had the right to administer corporal punishment to his pupils based on a delegation of the parental authority. * * *
> "* * * * *
>
> "The general rule for the use of corporal punishment, as developed through judicial decisions, is that corporal punishment, reasonable in degree and administered by a teacher to a pupil as a means of discipline, is privileged in that the administration of such punishment will not give rise to a cause of action for damages against the teacher. * * *
> "* * * * *

"The very nature of the general rule stated earlier makes it clear that where it is sought to hold a teacher liable in damages for punishment administered to a pupil, the most important question is whether or not the punishment is reasonable."

In 1 Wharton, Criminal Law and Procedure 694, § 345 (Anderson 1957), the author states:

"At common law a schoolmaster or teacher possessed discretionary power to inflict punishment upon his pupils and was not criminally liable for assault in so doing unless the punishment was of such nature as to cause permanent injury to the child or had been inflicted arbitrarily and without proper cause or maliciously."

Plaintiff urges that corporal punishment should be barred under the cruel and inhuman punishment provision of the Eighth Amendment.[4] He points, however, to no case which holds that the common law rule set forth above, fairly applied under proper instructions, constitutes a violation of that provision.[5]

---

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[5] As authority plaintiff points to Aron and Katz, *Corporal Punishment in the Public Schools*, 6 Harv Civil Rights-Civil Liberties L Rev 583, 593-94 (1971), where the authors conclude:

"Once prevalent as a generally accepted means of controlling behavior, corporal punishment is officially sanctioned today only against children. It is inconsistent with modern educational theory and methods, which have progressed from a strict authoritarian concept of education to one emphasizing communication and rapport between teacher and student. The reliance on force, abusive and brutal at times, is a counterproductive means of achieving order in the schools. With an understanding of the effects of corporal punishment and an appreciation for the recently recognized status of students, courts should find corporal punishment cruel and unusual and a denial of due process of law."

He urges that *Jackson v. Bishop,* 404 F2d 571 (8th Cir 1968), supports his contention. There in a lengthy analysis by Judge Blackmun the court concluded that the use of the strap for the infliction of corporal punishment upon the prisoners confined in the Arkansas state penal institutions constituted cruel and inhuman treatment within the meaning of the Eighth Amendment. We can find nothing in that opinion which would hold unconstitutional the physical removal of a disruptive student from the classroom by a teacher who used only such means as were reasonable and necessary for that purpose. Recently in *Ware v. Estes,* 328 F Supp 657 (ND Tex 1971), *aff'd* 458 F2d 1360 (5th Cir 1972), the court considered this problem in relation to the laws of Texas and the regulations of the Dallas School Board in a class suit brought to enjoin the use within the school system of corporal punishment. The court said:

> "It is not within this Court's function, or individual competence, to pass judgment upon the merits of corporal punishment as an educational tool or a means of discipline. The wisdom of the policy is not the Court's concern. The only judgment made is that the evidence has not shown this policy to be arbitrary, capricious, unreasonable or wholly unrelated to the competency of the state in determining its educational policy." 328 F Supp at 659.

More recently, in *Glaser v. Marietta,* 351 F Supp 555, 558, (WD Pa 1972), the court said:

> "* * * If corporal punishment administered by a parent is not unconstitutional, then a reasonable utilization of that same form of chastisement by a properly delegated person is not prohibited. The child has no constitutional grounds to object to such disciplinary methods so long as they are reasonable,

properly administered so as not to cause harm, and are legally authorized.

"* * * * *

"The School District has the power to enact necessary regulations for the conduct of its students and the orderly control of activities in the classroom, including methods of enforcement. Tinker v. Des Moines Independent School District, 393 U.S. 503, 89 S. Ct. 733, 21 L.Ed.2d 731 (1969). It is the student's obligation to submit to the regulations or suffer the prescribed lawful consequences. We agree with the two district court cases cited to us as to the holding that corporal punishment of school children is not a *per se* cruel and unusual punishment in the constitutional sense. *See* Sims v. Board of Education, 329 F.Supp. 678 (D.C.N. Mexico 1971) and Ware v. Estes, 328 F.Supp. 657 (N.D. Tex. 1971), aff'd. per curiam 458 F.2d 1360 (5th Cir. 1972)."

In *Sustar v. County Court for Marion Co.,* 101 Or 657, 665, 201 P 445 (1921), the court considered Oregon Constitution, Art I, § 16,⊛ and said:

"In order to justify the court in declaring punishment cruel and unusual with reference to its duration, the punishment must be so proportioned to the offense committed as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances * * *."

Accordingly, we conclude that there was here no violation of the state or federal prohibitions relating to cruel and unusual punishment.

---

⊛ Oregon Constitution, Art I, § 16:

"Excessive bail shall not be required, nor excessive fines imposed. Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense. —In all criminal cases whatever, the jury shall have the right to determine the law, and the facts under the direction of the Court as to the law, and the right of new trial, as in civil cases."

It is true, of course, that the common law rule is subject to statutory modification.[7] Prior to 1965 the Oregon statute (ORS 342.580 (1)) provided:

"When in charge of a school or class, as applicable, a teacher shall:

"(1) Maintain order *. * *."

By Oregon Laws 1965, ch 100, p 97, the legislature adopted a new code relating to education, repealing many sections of the statutes including ORS 342.580.

In lieu thereof it provided:

"(1) Public school pupils shall comply with rules for the government of such schools, pursue the prescribed course of study, use the prescribed textbooks *and submit to the teacher's authority.*

"(2) The district school board may authorize the punishment, suspension or expulsion of any refractory pupil.

"(3) *Wilful disobedience, open defiance of a teacher's authority or the use of profane or obscene language is sufficient cause for punishment,* suspension or expulsion from school.

"* * * * *." (Emphasis supplied.) ORS 339.250.

The incident here occurred while the foregoing statute was in effect.[8]

---

[7] NJSA, Education 18A:6–1; Mass Gen Laws ch 71, § 37G (1972), which provides:

"The power of the school committee or of any teacher or other employee or agent of the school committee to maintain discipline upon school property shall not include the right to inflict corporal punishment upon any pupil. (Added by 1972, 107, § 1, approved March 23, 1972, effective 90 days thereafter.)"

[8] In 1971 the legislature by ch 561, § 1, p 980, amended ORS 339.250 by substituting for the word punishment in §§ (2) and (3) the word "discipline." This was after the act here complained of.

We find it persuasive in our analysis of the Oregon statutory scheme that the 1971 legislature in adopting the new Criminal Code provided in ORS 161.205, relating to justification:

"The use of physical force upon another person that would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances:

"(1) A parent, guardian or other person entrusted with the care and supervision of a minor or an incompetent person may use reasonable physical force upon such minor or incompetent person when and to the extent he reasonably believes it necessary to maintain discipline or to promote the welfare of the minor or incompetent person. *A teacher may use reasonable physical force upon a student when and to the extent the teacher reasonably believes it necessary to maintain order in the school or classroom.*

"* * * * *." (Emphasis supplied.)

Nothing in that provision is inconsistent with the view we have taken here of ORS 339.250.

Nothing in the foregoing statutes in our view modifies the common law rule set forth above. We hold that such is the rule in this state.

█ █ Plaintiff next contends that defendant school board had adopted Regulation 4201, Policies and Regulations, Portland Public Schools, at G-1:

"In extreme cases where other means fail to obtain obedience, teachers or administrators may inflict corporal punishment. *Except in the event of forcible and physical resistance to the teacher's authority, corporal punishment shall be administered only after the teacher has procured in advance the approval of the principal.* Such punishment shall be administered either by the staff member, or by

a teacher in the presence of the principal, and shall be reported to the Office of the Superintendent not later than twenty-four (24) hours after its occurrence." (Emphasis supplied.)

He contends that defendant Weitz failed to comply with this. We disagree. Here there was substantial evidence that Richard offered "forcible and physical resistance to the teacher's authority." Thus it became a question of fact for the jury. The instruction[⑨] plaintiff requested based on that regulation was overbroad. The regulation, in our view, reasonably construed, does not require, as plaintiff's requested instruction does, that prior to removing a disruptive student a teacher have "attempted all other means including expulsion, suspension and detention in an effort to control * * * [the student's] behavior." (See n 9.) So to construe it would largely render the regulation a nullity when the student exerted "forcible and physical resistance to the teacher's authority." Policies

---

[⑨] Plaintiff's Requested Instruction No. 4:

"If the Court fails to give instruction No. 3, plaintiff requests in the alternative, the following instruction:

"A teacher may only use punishment or force in extreme cases when other means have failed to obtain obedience.

"You must find plaintiff's conduct was so extreme as to justify defendant Weitz in forceably taking hold of him. In considering whether the situation was extreme you should consider the general behavior of the students in Mr. Weitz's classroom, Mr. Weitz's appearance and behavior towards the students, their general understanding of how they should behave in his classroom and plaintiff's prior behavior in defendant Weitz's classroom.

"You must also find Mr. Weitz attempted all other means including expulsion, suspension and detention in an effort to control plaintiff's behavior.

"You must further find plaintiff's resistance to Mr. Weitz's authority was forceable and physical which means he did a physical act which necessitated immediate and physical action on the part of Mr. Weitz."

and Regulations, Portland Public Schools, G-1, § 4201, supra. The court correctly refused to give the challenged instructions. These assignments are without merit.

Finally, plaintiff assigns as error the receipt into evidence of a written report of the incident prepared by defendant Weitz during the afternoon of the day of the incident and on that day submitted it to the principal of the Sabin School. The exhibit was received by the court as past recollection recorded.

In *State v. Sutton,* 253 Or 24, 26-27, 450 P2d 748 (1969), the Supreme Court reconsidered the rules relating to such evidence. The court there held that the absence of a present recollection by the writer is not a prerequisite to the receipt of a document constituting past recollection recorded. The court said:

"* * * Professor Wigmore has put his finger upon the fallacy in our present rule. In disapproving such a rule he states:

" '* * * Is the use of past recollection necessary (1) because in the case in hand there is not available a present actual recollection in the specific witness, or (2) because in the usual case a faithful record of past recollection, if it exists, is more trustworthy and desirable than a present recollection of greater or less vividness?

" 'The latter view, it would seem, is more in harmony with general experience, as well as with the attitude of the judges who early vindicated the use of past recollection. A faithful memorandum is acceptable, not conditionally on the total or partial absence of a present remnant of actual recollection in the particular witness, but *unconditionally*; because, for every moment of time which elapses between the act of recording and the occasion of testifying, the actual recollection must be inferior in vividness to the recollection perpetuated in the

record.' (Emphasis theirs.) Wigmore, Evidence (3d ed) 76 § 738.

In footnote 1 under the same section Wigmore states as follows:

> " 'Thus even though the witness has testified from present recollection, he may *also introduce a book or memorandum* which satisfies the ensuing rules [rules concerning past recollection recorded]. This record serves to corroborate his present testimony; common sense dictates this: * * *.' (Emphasis theirs.)"

The rules concerning "past recollection recorded" referred to in *Sutton* are described by 3 Wigmore, Evidence (3d ed):

(1) "Recollection must have been fairly fresh when "recorded" (§ 745).

(2) "Correctness of record" (§ 746).

(3) Witness must verify correctness of the document from personal knowledge (§ 747).

(4) The original record is produced, if available (§ 749).

(5) Document must be shown to opposing counsel on demand both for inspection and cross-examination (§ 753).

Wigmore then states:

> "If by verifying and adopting the record of past recollection the witness makes it usable testimonially, and if by this verification alone can it become so usable, it follows that the record thus adopted becomes to that extent the embodiment of the witness' testimony. Thus, *(a) the record, verified and adopted, becomes a present evidentiary statement of the witness; (b) and as such it may be handed or shown to the jury by the party offering it.*" (Emphasis in original.) Wigmore, supra, 97, § 754.

As was true in Sutton, under the evidence, the writing here met fully each of the foregoing requirements.

Wigmore, supra, 100, § 755, concludes by stating:

"* * * The trial Court's discretion should be allowed to control. There should be literal interpretation and liberal exemption. And no ruling of admission should ever be deemed an error worth noticing on appeal."[10]

■ ■ The mere fact that evidence is self-serving does not itself render it inadmissible. *Wright v. Swann,* 261 Or 440, 447, 493 P2d 148 (1972); *Zeller v. Dahl,* 262 Or 515, 499 P2d 1316 (1972); *Timber Access Ind. v. U.S. Plywood,* 263 Or 509, 503 P2d 482 (1972). If it were, as the trial court here pointed out, most evidence would be inadmissible. *See also,* McCormick, Evidence 688, § 290 (2d ed 1972), and cases cited therein, at n 15. This is because as stated in *Timber Access Ind. v. U.S. Plywood,* supra, 263 Or at 515, "* * * The exemptions to the rule usually encompass situations in which the out-of-court statements are made under circumstances which guarantee the probable trustworthiness of the statements."

Plaintiff argues that the trial court did not properly exercise its discretion. We do not agree. Such danger of untrustworthiness as may have existed due to the self-serving aspect of the declaration was largely obviated here because the declarant himself was also the witness through whom the exhibit was offered, and therefore subject to cross-examination regarding all

[10] In 3 Wigmore, Evidence (Chadbourn rev 1970), 125, § 755, the last sentence reads as follows:

"* * * And a ruling of admission should seldom, if ever, be deemed an error worth noticing on appeal."

aspects of its authenticity, reliability and accuracy. *Wright v. Swann,* supra, 261 Or at 451; McCormick, supra, 583, § 245; Comment, *Evidence—Hearsay—Exclusion of Self-Serving Declarations,* 61 Mich L Rev 1306, 1319 (1963). Clearly the court did not abuse its discretion here.

Affirmed.