HAMITER, Justice.
 

 In this litigation, the subject matter of which has been before us on two previous occasions, Emmett Erwin Houeye seeks reinstatement by the St. Helena Parish School Board, which discharged him while a permanent teacher in and the principal of Woodland High School, and he also demands back salary from the date of his dismissal.
 

 On the first consideration by this court we sustained defendant’s exceptions, grounded on the contention that plaintiff’s mandamus proceeding was unauthorized, and dismissed the suit. 213 La. 807, 35 So. 2d 739. Subsequently, in a new and proper proceeding, we overruled defendant’s plea of prescription and its exceptions of no
 
 *969
 
 right and no cause of action, which had been sustained by the district court, and remanded the case for further proceedings. 220 La. 252, 56 So.2d 413.
 

 On the remand the district court heard and considered the merits of the litigation, and it rendered a judgment affirming the action of the school board and rejecting the demands of plaintiff. From that judgment plaintiff is now appealing.
 

 Pertinent to this cause are the following provisions contained in LSA-R.S. 17:443 :
 

 “A permanent teacher shall not be removed from office except upon written and signed charges of wilful neglect of duty, or of incompetency, or dishonesty, and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher.
 

 “If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, on charges of wilful neglect of duty, or of incompetency, of dishonesty, and ordered removed from office, or disciplined by the board, the teacher may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the mattér. * * * ”
 

 In keeping with the quoted statutory provisions, during the early part of 1946, some 42 citizens of the Fifth Ward of St. Helena Parish and patrons of the Woodland High School submitted to the defendant school board a written petition signed by them, they charging that plaintiff (the principal of and a teacher .in the mentioned school) had committed 17 specifically listed acts of wilful neglect of duty, imcompetency and dishonesty, and they requesting that after a hearing or trial on the charges he be removed from his office and discharged as a teacher. Acting on the petition on March 19, 1946, following due consideration thereof the school board adopted a. resolution (all six members favored it) which provided for a hearing on the charges at a special meeting to be .held April 10, 1946, at 10:00 A.M. o’clock. Notified by letter of the resolution, plaintiff replied that he desired a private hearing.
 

 On April 10, 1946, at the scheduled special meeting, the board first approved plaintiff’s request for a private hearing. Next, it adopted resolutions which authorized the petitioners to have representation at the hearing, it to be by one of them and also by an attorney whom they had employed, to which resolutions plaintiff’s counsel voiced objection. The board thereafter conducted a lengthy hearing on the charges, .receiving the testimony of numerous witnesses (including that of plaintiff) which was later transcribed. At the hearing’s conclusion a
 
 *971
 
 resolution was adopted, reading: “Be it resolved that in the opinion of the St. Helena Parish School Board from the testimony-taken Mr. E. E. Houeye is guilty of dishonesty and incompetency, and is discharged as Principal of the Woodland High School.” Voting in favor thereof were five of the six board members. The remaining member was present, but he did not vote.
 

 In due course plaintiff sought a judicial review of the action of the school board. And when the matter came on for determination on the merits there was before the district judge not only the testimony adduced at the board hearing but also much additional evidence which had been received in court, an unrestricted and a thorough trial of the charges against plaintiff having been permitted.
 

 The ultimate decision of the district court on the merits, as before shown, was one affirming the action of the school board and rejecting plaintiff’s demands.
 

 Complaining of that decision plaintiff, on this appeal, contends (to quote from the brief of his counsel) that (1) “The proceedings before the School Board should be nullified on the grounds that the hearing was not private in direct contravention of [LSA-] R.S. 17:443”, and (2) “The evidence presented to the School Board and in the subsequent litigation utterly failed to establish any evidence of acts of wilful neglect of duty, dishonesty or incompetency.”
 

 Respecting the first contention plaintiff argues, in effect, that an otherwise “private” hearing (from which admittedly the public at large was excluded) was rendered a “public” hearing by the presence, pursuant to the board’s authorization, of the petitioning group’s attorney and one of its^ members. We do not agree. The citizens and patrons preferring the charges were entitled to be reasonably represented at the private hearing in order that the necessary evidence might be introduced in an orderly and effective manner, and the permitted attendance of the mentioned two' persons was not an unreasonable representation.
 

 Neither is plaintiff’s second contention sustainable. At least one of the charges contained in the petition was amply supported by the evidence and it alone, in our opinion, was sufficiently grave to justify the school board’s conclusion that plaintiff was incompetent to serve as principal and teacher. That to which we refer reads : “In 1946, said Emmett E. Houeye brutally beat one Floyd Courtney for misbehavior to such an extent that charges were brought against him in the District Court.”
 

 In his testimony plaintiff admitted' having whipped Floyd Courtney in January, 1946 with a piece of standard or regular sash cord, about eighteen inches long, assigning as the reason therefor the pupil’s absence from school without permission. In describing the resulting condition of the child, who was twelve years old and of average size for his age, his mother stated: “Well, there was a place on each side of
 
 *973
 
 the child’s seat about that large. Black and blue and red. I don’t think there was a clear spot. * * * I can’t give you the number of inches but both sides of the child’s seat was like that, and I told the child to notice about how long it was before it left and he said it was almost 21 days before his skin was perfectly cleared up as it should be.”
 

 About two days after the whipping the parents appeared before the school board and exhibited the child; also they visited the district attorney’s office, there filing criminal charges against plaintiff. Respecting the effect of the punishment as found by the school board members, one of them testified: “He was as bad a whipped chap as I ever saw, if not a little worse than I ever saw. It had been done two days and it was the worse whipped chap I ever saw. * * . * it was as black as it could be. Way down his legs, you couldn’t cover it with your two hands. We had him take his clothes off. His mother and sisters wanted us to do that and we did. I didn’t see the hide busted no where but it was black.” Another said that in all-of his school experience he had never seen a child whipped so badly as was Floyd Courtney, and that the body was bloodshot for about twelve inches from the belt down. A third member gave this description: “I would call it awful. It was the worst whipped kid I ever seen. * ■* * He was just blue. I think it happened two or three days before but it was still black and blue. You have seen fellows get hit around the eye. It was that dark— all purple.” And a fourth board member (one apparently very friendly with plaintiff and who refrained from voting on the dismissal resolution although present), when asked if the boy was brutally whipped, stated that “he was whipped pretty bad.”
 

 Without denying that the discussed punishment was unusually severe, plaintiff’s counsel maintain that the matter was settled to everyone’s satisfaction by a letter addressed to plaintiff and signed by the child’s parents, under date of January 22, 1946, in which the following was-said:
 

 “As a result of our conversation in your office at the Woodland School, we have changed our opinion, and wish to withdraw statement made which caused charges to be preferred against you for using corporal punishment as a means of punishing our son Floyd.
 

 “We now desire to have our son remain in your school, and receive the same fair and impartial treatment as is shown other children, as has been done to date.
 

 “It is understood that if the occasion should ever arise that in your opinion our son should be punished by using corporal punishment, in lieu of said punishment you will send him home.
 

 “A copy of this letter is being sent to the-Parish Superintendent with the request that it be read at the regular school board meeting.”
 

 
 *975
 
 Irrespective of the purpose and effect of that letter (admittedly prepared by plaintiff), we entertain serious doubt that the signing thereof was entirely voluntary on the part of the child’s parents. The record before us contains considerable evidence tending to show that plaintiff threatened to institute proceedings in the juvenile court, to have the child declared a delinquent and sent to a reform school, if the parents insisted on pressing the criminal charges filed with the district attorney; and it could well be that the parents signed the letter as a result of the attested threat.
 

 As to whether teachers in the public schools of this state are prohibited from inflicting corporal punishment on their pupils as a disciplinary measure, the record before us does not disclose (it contains no rules and regulations of the State Department of Education) and no statute or decision on the subject has been called to our attention. But conceding for the sake of argument that they are not so prohibited- — rather, are clothed with discretionary authority with respect thereto — it is certain (and we hold) that the corporal punishment must be reasonable and confined within the bounds of moderation. It must not be cruel, brutal, excessive — as was that administered by this plaintiff to the pupil Floyd Courtney. Uniformly to this effect is the jurisprudence of courts in other jurisdictions which have passed on the question, and such is the general rule as stated in 47 American Jurisprudence, verbo Schools, Section 175.
 

 For the reasons assigned the judgment appealed from is affirmed.
 

 PONDER, J., recused.