154 So.2d 581 (1963)
Hampton C. JOHNS, Sr., Plaintiff-Appellant,
v.
JEFFERSON DAVIS PARISH SCHOOL BOARD, Defendant-Appellee.
No. 861.
Court of Appeal of Louisiana, Third Circuit.
June 18, 1963.
*582 Edwards & Edwards, by Edwin W. Edwards, Crowley, for plaintiff-appellant.
Bernard N. Marcantel, Jennings, for defendant-appellee.
Before TATE, HOOD, and CULPEPPER, JJ.
TATE, Judge.
The plaintiff Johns was a tenured high school principal. After notice and a formal hearing, LSA-R.S. 17:443, the defendant school board dismissed the plaintiff from the school system on the grounds of incompetency and neglect of duty.
This is a suit for judicial review of his dismissal. The trial court rejected the plaintiff's demand for reinstatement, finding that the school board had not abused its discretion and had discharged the plaintiff upon the basis of sufficient proof of incompetency.
The plaintiff appeals this adverse ruling. He contends that the school board acted arbitrarily and unreasonably in discharging him and that the evidence at the school board hearing does not prove him to be guilty of such incompetence or neglect of duty as to warrant his discharge as a tenured permanent teacher.
The plaintiff's suit for judicial review of his dismissal by the school board is brought under LSA-R.S. 17:443, which provides: "A permanent teacher shall not be removed from office except upon written and signed charges of wilful neglect of duty, or incompetency or dishonesty, * * *583 and then only if found guilty after a hearing by the school board * * *. If a permanent teacher is found guilty by a school board, * * * the teacher may * * * petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. * * *"
Our Supreme Court has recently summarized the standard of judicial review of the action of a school board in removing a tenured teacher, as follows: "* * * When there is a rational basis for an administrative board's discretionary determinations which are supported by substantial evidence insofar as factually required, the court has no right to substitute its judgment for the administrative board's or to interfere with the latter's bona fide exercise of its discretion." Lewing v. De Soto Parish School Board, 238 La. 43, 113 So.2d 462, 466.
The plaintiff Johns has been a teacher since 1930. He has been employed since 1936 by the defendant school board. He has been a principal of the colored school in Welsh since 1942. In 1959, a high school department was added to this school, and the plaintiff then became high school principal of the entire school at the site. Approximately five hundred students attend the school at which the plaintiff Johns was principal.
The record reflects that in March of 1962 one of the teenage high school girls was found to be pregnant. The witnesses from the school testified that there was an "uproar" as a result. The subsequent police investigation revealed that at least two of the high school girls had engaged in sexual relations.
The police investigation had also revealed that several of the acts of sexual promiscuity had occurred during school hours. Counsel for the plaintiff-appellant suggests that, because of the community uproar over the pregnancy, the principal was made the scapegoat for these surreptitious acts he could not reasonably have known of nor prevented.
Shortly after the police investigation of the incidents in question, and apparently as a result thereof, the plaintiff was charged with eleven specified charges of wilful neglect of duty and incompetency. He was ordered to show cause at a board hearing why upon such charges he should not be removed as a permanent teacher and high school principal. (We will refer to these as Charges 1 through 11; see notice of hearing at Tr. 7-9, Exhibit "B".)
At the hearing, held twenty days after the notice, the school board found the plaintiff to be guilty of wilful neglect of duty and incompetence in eight respects. (We will refer to these as Findings 1 through 8; see school board resolution ordering the dismissal of the plaintiff as permanent teacher and as high school principal, Tr. 5-6, Exhibit "A".)
At the outset, we must comment that the generalized findings of guilty by the school board do not correspond with the more specific charges of neglect of duty and incompetence upon which the hearing was based. It is apparent from the record that many of the specific allegations contained in the charges were not proven or else had been satisfactorily explained. Nevertheless, because of the generalized language of the findings, as well as because of the failure of the findings to correspond with the charges in either language or order or subject matter, it is somewhat difficult to ascertain the school board's conclusions of guilty or not as to most of the specific delinquencies with which the plaintiff was charged by formal notice prior to the hearing.
This difficulty is increased because some of the evidence taken at the hearing concerned alleged delinquencies with which the plaintiff had not been charged prior to the hearing.
*584 Further, based upon such evidence, the board found the plaintiff to be guilty as to certain delinquencies with which he had not been charged by the formal notice, especially: Finding 5, relating to his alleged failure to carry out recommendations of his superiors; Finding 8, concerning his alleged failure to furnish the names of his lunchroom committee; and Finding 2, concerning his alleged failure to make required reports, insofar as it refers to other than the specific delinquencies of which the plaintiff was given notice by Charges 6, 9, and 10.[1]
Evidence was improperly received as to these alleged delinquencies with which the plaintiff had not been charged by formal notice prior to the hearing. The statutory requirement of formal notice and hearing contemplates a reasonable and substantial compliance with the general principle of due process of law, which contemplates that the teacher be given formal notice of charges against him made with sufficient specificity that he be formally enabled to prepare any defense he may have to these charges; and the principle also reasonably contemplates that the hearing be limited to the formal charges of which the teacher is given notice prior to the hearing, in order that he may have a reasonable opportunity to examine and refute the evidence tendered against him and to raise any legal defense to it which he may have. See excellent discussion of the question in King v. Brown, La.App. 2 Cir., 115 So.2d 405; also Immel v. Brown, La. App. 3 Cir., 143 So.2d 156. Cf., comment in Lewing v. De Soto Parish School Board, cited above, at 113 So.2d 466. "At the outset, we might state that the eleven charges are couched in general language. They do not specify definite acts; neither do they state the number of times the dereliction of duty was committed, nor specify the dates on which infractions occurred. Nothing is itemized on pin-pointed."

Evaluation of Charges.
The eleven formal charges against the plaintiff fall into several main groups, each of which we will discuss separately, as follows:
(a) Sexual promiscuity of students: Charges 1, 2, and 3A relate to the plaintiff's alleged failure to maintain adequate supervision and discipline so as to prevent sexual relations between the students on school property or during school hours. Without detailing the extensive evidence as to this, we will simply state that the four isolated incidents of sexual misconduct during school hours were proven to have occurred secretly and through the students' surreptitious violation of adequate school regulations. The evidence fully indicates that the plaintiff could not reasonably have known of nor prevented these incidents, nor does any evidence support that with regard to them he is guilty of any incompetence or wilful neglect of duty.
(b) School lunch problems: Charges 5 and 7 involve alleged violations of school lunch regulations. Without detailed discussion, we will simply state that evidence as to the trivial and immediately-corrected incidents concerned does not *585 prove any incompetence or wilful neglect of duty on the part of the plaintiff.
Charge 6 concerns the plaintiff's alleged delinquency with regard to having forms completed for the applications of the parents of indigent children to have free school lunches. The parish lunchroom supervisor stated that on three occasions during the school year she had asked to look at the forms (which were maintained within the principal's office since his was the primary responsibility in the matter) and had found these forms very incomplete.
These legal-size page forms are detailed and rather complex, and the plaintiff testified that the parents of most of the indigent colored children concerned were too illiterate to complete them.
We note the supervisor's testimony that other schools also were fairly lax in the matter of completing these forms and that the plaintiff's alleged delinquency in this regard was not prior to the present charges considered important enough to be the subject of a formal request for improvement (as, for instance, was the subject matter of Charge 5). We further note the plaintiff's testimony at the time of the hearing that he had himself (since the parents could not do so) finally completed each of these application forms, which were available for the inspection of the supervisors.
Under all the circumstances, we believe that the plaintiff's failure to comply with the requirement that he secure the parents' completion of this minor set of forms, included among his myriad other and more important responsibilities, should not be the basis of formal removal action, in the absence of specific warning by his superiors and an opportunity to correct any tardiness in this regard. See Lewing v. De Soto Parish School Board, cited above, at 113 So.2d 444 (syllabus 7).
(c) Disregard of instructions with regard to school bus drivers: Charge 8 alleges that the plaintiff wilfully disregarded instructions by requiring school bus drivers to report to the school too early in the morning. He was found guilty of violating "written" instructions by the superintendent by requiring school bus drivers to report to the school by 8:00 A.M., although classes did not start until 8:30. (Finding 7.)
The evidence indicates, however, that the school board's written instructions in the matter did not regulate the time at which the school bus drivers were supposed to report, although the school board office as a general policy wished the drivers to report between 8:15 and 8:25, in order that the school children could leave their homes as late as possible.
The plaintiff testified that at the beginning of the 1961-1962 term he requested his school bus drivers to come to school by 8:00 A.M. (fifteen minutes earlier than the school board policy) for specified reasonable purposes, not realizing that it violated any board rule on the subject. However, as soon as the superintendent called to his attention that, under the board's general policy, the school busses should not arrive at the schools before 8:15 A.M., the plaintiff at once complied therewith.
We do not think that the evidence proves any wilful neglect of duty or incompetency in the matter.
(d) Incompetence in making reports: Charge 9 relates to the plaintiff's failure to report a decrease in the school bus route of a school but driver in September and December of 1961. Charge 10 relates to his mistake in sending in the name of a member of a graduating class under the name of a father, instead of the name she was baptized under (the student was illegitimate). It also reflects that the matter was called to his attention on graduation night and that within nine days he had secured the issuance of a corrected diploma.
The first charge concerns a deficiency in the completion of only two among the myriad of forms required of a principal, which the school board office did not feel to be serious enough to warrant any disciplinary action at the time it occurred; *586 the second an understandable mistake, which was immediately corrected. Minor, isolated inaccuracies in reports of this nature do not by themselves demonstrate incompetency or wilful neglect of duty. See Lewing v. De Soto Parish School Board, cited above, at 113 So.2d 467 (syllabus 9).
(e) Lack of discipline and lack of respect shown the principal: Charges 3B, 4, and 11 relate to the alleged incompetence of the plaintiff Johns as principal, in failing to maintain discipline within the school and to secure the cooperation of the teachers and students to such end. This lack of discipline is evidenced especially by the continuous noisiness of the school during school hours, caused by the talking and other noises caused by students en route to change of classes (while other classes were in session), by their noisiness in the library-study hall, and by excessive movement of individual students in the school corridors during classtime (to and from the restroom, etc.). It is also instanced by the lack of respect shown by the students to the principal, evidenced by their answering him back and refusing to obey his instructions.
These conditions were proved to have existed by the testimony of two teachers and a school bus driver at the school, and also by that of four of the supervisory personnel of the school board who observed the school's disciplinary problem on their visits occasioned by duties which did not involve questions concerning the school's discipline.
We are aware, as able counsel for the appellant suggests, that this testimony should be evaluated in the light of several mitigating circumstances.
The evidence shows that the lack of discipline became a problem only after the school became a high school in 1959 with older students. (The plaintiff had served as principal of the elementary school for seventeen years prior thereto without complaint as to any deficiency in such regard.) To some extent the noisiness following 1959 was magnified by the metal steps and narrow corridors of the new two-story building in part of which the new high school department was housed.
Further, the plaintiff's school had ten juvenile delinquents sent to the reform schools during the 1961-1962 term, more than all the other schools of the parish combined. All the witnesses indicate that during that term the school was attended by a group of exceptionally delinquent and rebellious children. The school board witnesses themselves could not maintain adequate discipline, nor could they offer suggestions of corrective measures substantially different than were followed.
There was evidence from the school board witnesses themselves that the plaintiff Johns did attempt to maintain discipline, even on occasion whipping students who were sent to his office for disciplining, and that he did chastise those who failed to show him respect. Thus, one of the supervisors noted that the students "do not respond to discipline. I have seen the principal, and there is no doubt in my mind but what he was serious and wanted to bring about a good situation, but he didn't have that ability." Tr. 191.
The administrative context of the plaintiff's disciplinary problems is also of some significance in an evaluation of the plaintiff's inability to handle them. The plaintiff's school became a high school in 1959 with six entirely new teachers, five of whom were just out of college and had never taught before. Further, there was considerable evidence as to noise emanating from the school library during class hours; but the evidence further reflects that the school was furnished only a partime librarian, who served as such for only two hours daily and who had to be teaching in another classroom during the remainder of the school day.
The plaintiff's alleged inability to maintain discipline in this school should also be evaluated in the light of the following: *587 The duty to maintain discipline is primarily the principal's problem, and the principal should go to the superintendent of education if he has an incorrigible situation. Tr. 168. However, although both the superintendent and supervisors observed and knew of the school's disciplinary problem, the school board office itself took no official action to correct the situation until after the pregnancy of one of the students was discovered; which to some extent suggests that the lack of discipline at the school was not felt to be as serious a reflection upon the principal's competence at the time as the school board now feels it was.
Ultimately, however, the school board has to determine whether the school's lack of discipline resulted from incompetence on the part of its principal rather than from factors beyond his control. That is, the qualities which may enable one person to control an unruly situation which another person is unable to, may lie deep within the personality and may not be capable of objective proof; and the determination of the school board that the lack of disciplinary control results from professional or personal incompetence should not be disturbed, where there is substantial evidence to this effect and a rational basis for this determination. Lewing v. De Soto Parish School Board, cited above.
The school board findings that the lack of discipline at the school were due to the plaintiff's incompetence (Findings 3 and 4), we regard, therefore, as within the board's discretion and as supported by sufficient evidence.

Summary.
Eleven specific charges of incompetence or neglect of duty were placed against the plaintiff.
The evidence taken at the school board hearing disproves all charges of wilful neglect of duty and sustains only two and part of another of the charges of incompetence. The board's findings, however, are drawn in generalized language which seems to indicate that it erroneously concluded that some of the other charges had also been adequately proved.
Additionally, evidence was also taken at the hearing as to alleged delinquencies of the plaintiff beyond those with which he had been formally charged. Although we do not believe that such evidence sustains any charges which might have been based upon these other alleged delinquencies, and although evidence as to them was improperly received against the plaintiff, nevertheless the board further made findings that the plaintiff was guilty of these other delinquencies of which he had not been given notice prior to the hearing as required by law.
Thus, the board's dismissal of the plaintiff as high school principal and as a permanent teacher in the parish school system was apparently based to a large extent upon the unsustained charges and upon the improperly admitted evidence of alleged delinquencies with which the plaintiff had not been formally charged prior to the hearing.
On the other hand, there is evidence substantially supporting the charges that the plaintiff had been unable to maintain adequate discipline in the school plant under his direction since it became a high school in 1959. We cannot say that, on the basis of such evidence, the school board acted arbitrarily and not on the basis of substantial evidence in finding that the plaintiff was incompetent to serve as a high school principal because of his inability to maintain adequate disciplineeven though we realize that the record reflects many extenuating circumstances which, had the board so accepted them, tend to indicate that the high school's disciplinary problem derived from factors without the control of the plaintiff as its principal.

Proper Disposition of Appeal.
Considering all these factors, therefore, we think that we must reverse and set aside the action of the school board in dismissing the plaintiff from the school system insofar as based on findings which *588 have been improperly made and on evidence improperly received at the hearing. We cannot order the plaintiff's reinstatement, however, because the evidence supports a finding that the board adequately proved its charge of the plaintiff's incompetence to serve as high school principal through lack of ability to maintain disciplinary control.
However, if the board had rejected the unproven charges and those based on improperly admitted evidence, we are uncertain what, if any, disciplinary action the board might have taken. It might, for instance, simply have reprimanded the plaintiff; or, if it had removed him, the "removal" might have consisted of a demotion or a transfer to some less favorable assignment, instead of an outright dismissal from the school system. State ex rel. Rathe v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153; State ex rel. McNeal v. Avoyelles Parish School Board, 199 La. 859, 7 So.2d 165; cf., Verret v. Calcasieu Parish School Board, La.App. 1 Cir., 85 So.2d 646.
We note, for instance, that the plaintiff had been a tenured school teacher for almost thirty years, that he had served seventeen years as an elementary school principal without complaint, and that the only incompetence proven by the record is his inability to maintain proper discipline after his premises became a high school with older and more unruly students. As was stated at State ex rel. Rathe v. Jefferson Parish School Board, cited above, at 19 So.2d 164, where the demotion of a principal to a classroom teacher was sustained: "A teacher may be very competent and experienced in her particular line of work and, on the other hand, be lacking in the qualifications to make a competent and effective executive. The reverse may also be true that a person who is a very able administrator or executive would be a very unsatisfactory and poor instructor." (But cf., Houeye v. St. Helena Parish School Board, 223 La. 966, 67 So.2d 553, where the complete dismissal of a high school principal was affirmed upon proof of conduct which indicated his disqualification to serve either as principal or classroom teacher.)
Having set aside the initial determination of the school board, nevertheless under the present circumstances we do not think it is within the competence of the court to determine what disciplinary action, if any, should or might have been taken by the board on the basis of the revised findings and after the elimination of the unproven charges and the improper evidence upon which the outright dismissal was at least partially based. These proceedings will therefore be remanded to the district court, with directions to it to remand this matter to the parish school board in order that the board might take such disciplinary action, if any, as it deems justified by the findings of the proven charges insofar as affirmed by this court, subject to further judicial review in these same proceedings, if any is sought, of the eventual final action of the school board disposing of the removal hearing.
In advance of such further disposition by the board, we do not think it to be appropriate to discuss the appellant's contention that, since the evidence concerns incompetence as a principal and not as a teacher, the board at the most should have demoted the plaintiff from principal instead of completely dismissing him as permanent teacher also from the school system. This question will not be a subject for judicial review until after the board's final action upon the remand.
For the foregoing reasons, the trial court judgment is set aside, and the case is remanded for further proceedings not inconsistent with the views expressed herein. The costs of this appeal, insofar as legally taxable, are assessed against the defendant public agency. LSA-R.S. 13:4521. All other costs to be assessed at the time of final determination of these proceedings.
Affirmed in part; set aside and remanded in part.
NOTES
[1] We may add that most of this evidence concerned alleged delinquencies which did not cause serious concern to the school board at the time of commission or omission. For instance, the plaintiff made eight minor clerical errors in his monthly attendance reports over a period of eight years, which were routinely called to his attention at the time and immediately corrected without further comment. Again, the visiting supervisors of classroom teachers (with the duty of visiting classrooms and to assist classroom teachers improve their instruction, Tr. 161) over the course of two or three years had made one or two friendly informal suggestions to the plaintiff concerning his school's disciplinary problem, discipline being beyond the scope of the duties of these classroom supervisors (Tr. 168); it is now contended that the plaintiff, who had never been charged with such delinquency prior to the hearing, is subject to discharge for wilful neglect or duty in failing to carry out these "recommendations".