241 So.2d 588 (1970)
Hazel JOHNSON et al., Plaintiffs-Appellants,
v.
HORACE MANN MUTUAL INSURANCE COMPANY et al., Defendants-Appellees.
No. 11526.
Court of Appeal of Louisiana, Second Circuit.
November 17, 1970.
Rehearing Denied December 11, 1970.
*589 Maurice R. Franks, New Orleans, for appellants.
Mayer & Smith, by Paul R. Mayer, Shreveport, for appellees.
Before BOLIN, DIXON and HEARD, JJ.
En Banc. Rehearing Denied December 11, 1970.
DIXON, Judge.
Plaintiff has brought an action for damages on behalf of her minor son and herself against the boy's teacher, his principal and the Horace Mann Mutual Insurance Company. She claims the damages to her son resulted from an excessive beating administered with a stick by the physical education teacher, Zolon Stiles. There was a trial by jury, and the verdict was returned in favor of the defendants, rejecting the demands of the plaintiffs, who have appealed.
Most of the facts are clear and most of the evidence is without contradiction. Jimmy Pharr was a student at Sarepta High School where paddling was a frequent form of punishment. On the day in question Coach Stiles had his paddle in his pocket before the beginning of his last period, a physical education class. He struck Jimmy Pharr once because Jimmy would not line up properly for a foot racing event; later in the same class, he administered a whipping to Jimmy as punishment for an improper start in another event.
After the class, Jimmy reported to the principal, who is also a defendant, and complained of the whipping, showing the principal marks on his backside. Jimmy's mother took him to a physician that afternoon, who found that he had multiple bruises of the body. Bruises were identified *590 behind the right ear, the left shoulder, the left buttock and left thigh. There is no evidence that the bruises were caused by any trauma other than the whipping.
Plaintiffs attempted to show that Jimmy suffered serious after-effects from the whipping. The evidence adduced at the trial of the case does not support their claim. The whipping occurred on March 27. Jimmy was hospitalized for three days beginning June 9 in an effort to determine the origin of headaches which Jimmy claims began after the whipping. The medical evidence does not support his claim that the headaches were caused by the whipping. There is evidence that Jimmy had been frequently absent from school, and frequently gave "headaches" as a reason for his absence before the altercation complained of.
The principal of the school, Harold Newsom, was also named a defendant. It was alleged that Newsom knew of the dangerous propensities of Stiles and negligently failed to take any steps to correct them.
The evidence only developed one prior occurrence on which a student had reported to the principal his having been bruised by a whipping from Stiles. The record does not establish that Stiles' actions in this earlier incident were unjustified. We cannot assume that Stiles should have been corrected or criticized by the principal on this previous occasion. The evidence does not establish that the principal knew of the dangerous manner in which the coach administered punishment to the students, nor that he should have anticipated that a student would be injured by an excessive whipping. Therefore, we cannot find Newsom is liable for the injuries inflicted by Stiles.
Although it may be doubtful that Louisiana law permits public school teachers to use corporal punishment, the parties to this litigation did not choose to fight on this battleground. Rather, it is tacitly conceded that the charge of the trial judge to the jury is correct. There was no objection by plaintiffs to the following charge:
"I further charge you that teachers are not prohibited from using corporal punishment; that is, spanking or whipping a child, but rather, that they have discretionary authority with respect thereto and that corporal punishment must be reasonable and confined within the bounds of moderation. Thus, it is seen that under the Law of the State of Louisiana, Mr. Zolon Stiles had the right to physically punish Jimmy Pharr if it constituted reasonable punishment and was confined within the bounds of moderation. Therefore, if you find that Mr. Stiles was reasonable and confined the physical punishment within bounds of moderation, he was not at fault, and you must return a verdict in favor of Mr. Stiles and against Mrs. Johnson and Jimmy Pharr."
No Louisiana statute or judicial decision is cited to us to establish the right of teachers to use corporal punishment. There is an effort by the defendants to draw upon a statute and civil code articles for an inference that teachers have the same right of corporal punishment as parents. R.S. 17:416 is the Louisiana statute concerning the discipline of pupils. It does not in any way attempt to confer upon teachers the right to use corporal punishment. It does not in fact reprobate the conduct of Jimmy Pharr, even as described by Zolon Stiles.[1]
*591 In connection with the statutory authorization of teachers to hold pupils to a strict accountability for disorderly conduct, the defendants refer to Civil Code Article 218 which confirms that the father and mother have a right to correct the child, "provided it be done in a reasonable manner." Reasoning that teachers stand "in loco parentis" by virtue of C.C. 220, defendants conclude that teachers are authorized to use corporal punishment. However, C.C. 220 states only:
"Fathers and mothers may, during their life, delegate a part of their authority to teachers, schoolmasters and others to whom they intrust their children for their education, such as the power of restraint and correction, so far as may be necessary to answer the purposes for which they employ them.
"They have also the right to bind their children as apprentices."
C.C. 220 does not say that fathers and mothers do delegate the power of restraint and correction to teachers, but that fathers and mothers may delegate such power. It might have been said, in days when schooling was a voluntary matter, that there was an implied delegation of such authority from the parent to the school and teacher selected by the parent. Such a voluntary educational system, like the system of apprenticeship also referred to in the article, has long since disappeared. Parents no longer have the power to choose either the public school or the teacher in the public school. Without such power to choose, it can hardly be said that parents intend to delegate the authority to administer corporal punishment by the mere act of sending their child to school.
Those cases in Louisiana which have dealt with the problem of corporal punishment in the schools are: Burrage v. Gill, 15 La.App. 126, 130 So. 857; Houeye v. St. Helena Parish School Board, 223 La. 966, 67 So.2d 553; Frank v. Orleans Parish School Board, La.App., 195 So.2d 451. The matter is the subject of a note in 14 Loyola Law Review 288.
The Burrage case did not arise from the public schools, but from the Louisiana Training Institute, a place of detention for juvenile delinquents and neglected dependents. The plaintiff was awarded $600.00 for what the court referred to as having been "brutally and unmercifully whipped," from which he "sustained no aftereffects." The court, in the Burrage case, reversed a *592 jury verdict which had been rendered in favor of the defendant.
Houeye v. St. Helena did not decide whether teachers have the right to inflict corporal punishment, pretermitting that question and deciding that the punishment administered the pupil exceeded the minimum standard set by the Supreme Court: "* * * it is certain (and we hold) that the corporal punishment must be reasonable and confined within the bounds of moderation. It must not be cruel, brutal, excessiveas was that administered by this plaintiff to the pupil Floyd Courtney." Houeye was a principal and a teacher seeking reinstatement from dismissal by the school board. The only charge considered by the Supreme Court "sufficiently grave" to justify the plaintiff's discharge was for the beating of Floyd Courtney. Floyd had been whipped with a piece of sash cord about eighteen inches long for absence from school without permission, and was described by one of the witnesses as "the worse whipped chap I ever saw."
In the case of Frank v. Orleans Parish School Board, the Court of Appeal said that they "expressly refrain from making any judicial pronouncement as to whether it is actionable per se for a teacher in a public school to place his or her hands upon a student" because a "general rule in the negative relative to his problem may encourage students to flaunt the authority of their teachers." The court did not believe that Henderson, the teacher, actually believed his safety was endangered from the child, but found that Henderson exceeded the force necessary to accomplish his objective, whatever it was, and that Henderson lifted the boy, shook him in anger, then dropped him to the floor. The boy sustained a broken arm from the fall. The Court of Appeal sustained a judgment in the amount of $2500.00.
On each occasion when the Louisiana appellate courts have decided cases involving corporal punishment in public institutions, they found that the whipping administered was excessive and unreasonable. Whether punishment is "excessive" or "reasonable" must necessarily be measured, at least in part, by the conduct of the child being punished, and the relationship between the teacher and the child. Zolon Stiles testified that he put his paddle in his pocket at the beginning of class, before the class went out to the playing field; "that day I had it out for him, that particular dayme and Jimmywe went over and asked himusually you tell a boy something like that and carry it out, usually they will go ahead and do what they are supposed to do, and in a case like that I put the board in my pocket when you're expecting trouble out of `em and usually you never have any."
Stiles testified that he "walked up to Jimmy and told him I had a paddle in my pocket and I said, if you don't get straight on the line today, I says, I'm going to use this paddle, right here that I've got in my pocket on you so you'd better get on the line right." Stiles hit Jimmy first when Jimmy's hand was across an imaginary line as students lined up to run a 220 yard dash. The next time Jimmy's group began to run, according to Stiles:
"A He just defiantly lined up behind the line that timesee?
"* * *
"A * * * I said, on your mark, get set and go, and Jimmy was behind so he takes off from behindhe wouldn't get on the lineand so I called him back, and I said, you're not doing a single thing I said today. And I caught him by the hands and started to hit him two or three licksI was going to hit him two licks I'd already warned him. And then I told him again before he got out the door to get on the line before he got out of the stadium and then we got out on the field and he lined up off the line, so I gave him one lick, so I thought, well, maybe I could give him two licks this time and it will sort of cure him, but he was not going to take it, when I caught *593 him by the hand and hit him one time he started pulling aloose and then pushed me back this way; in other words, he was trying to break aloose.
"Q All right, what happened to the paddle?
"A It broke.
"Q How many times did you hit him?
"A Oh, around six or seven times."
The testimony concerning the duration of the whipping and the ferocity of the teacher varies among the many witnesses. Several classmates of Jimmy testified that the whipping lasted for several minutes. One of the boys completed the 220 yard dash, during which time the whipping was in progress, and observed the end of the melee after he completed the run. The paddle broke in the course of the whipping, and Stiles picked up one piece and resumed striking Jimmy. A substitute teacher was in the vicinity, and was the only witness called by Stiles to testify as to the nature of the whipping. When questioned about the severity of the whipping, he said, "Well, as far as appearing to be, it didn't appear to be a brutal whipping." This witness, Lewis, described the affair as follows:
"Mr. Stiles said he wanted `em all to get on the line where they would have an equal opportunity and so during the time that they were to start he said that Mr. Pharr was not getting on the line and so he asked him to do it. He then said that he hadn't done anything that he'd asked him to do and that if he had to ask him again that he was going to have to take other measures. And at that time he took a paddle that he had out of his hip pocket caught him by the arm and began to whip him."
To state the case in a manner most favorable to Stiles, he attempted to head off misconduct by admonishing Jimmy before the class began. When Jimmy did not line up properly, Stiles struck him once. When Jimmy next lined up behind the line and started the race, Stiles recalled him and (again in language most charitable to Stiles) thrashed Jimmy soundly.
The broken paddle, the bruises and the testimony of the witnesses do not speak of reasonable punishment for gross misconduct; rather, the whipping given was excessive and unreasonable, if not premeditated, administered for a slight deviation from the required normal conduct.
Consequently, the verdict of the jury must be reversed. The case was fully tried, and the record is complete.
We do not find that the evidence established great and serious injury to Jimmy. The medical testimony does not support the claims made on his behalf. Substantial expenses were incurred by the plaintiff. A $14.00 bill was incurred for medical diagnosis and treatment of the bruises immediately after the whipping. However, he was hospitalized for three days and was referred to specialists some two and one-half months after the whipping. Although there were negative findings as a result of these examinations, we cannot conclude that they were made solely for the purpose of preparing for trial. Jimmy's complaints and the seriousness and the location of the bruises on his body justified making an attempt to determine whether the bruises caused his symptoms, and whether the symptoms could be satisfactorily treated. Consequently, Jimmy's mother will be allowed to recover for the medical expenses incurred in the amount of $741.95.
For pain, suffering and humiliation Jimmy will be allowed the sum of $1000.00. Although his injuries were not of a serious nature, the bruises took some time to heal, and were certainly not comfortable. Such a degrading experience as this public whipping has obviously caused Jimmy much discomfort, and is compensable.
The plaintiffs maintained that there were other errors committed in the trial *594 court. Our decision makes it unnecessary to discuss the other specifications of error noted by appellants.
Therefore, the judgment of the district court is reversed and there is now judgment in favor of plaintiff, Hazel Johnson, and against the defendants, Zolon Stiles and Horace Mann Mutual Insurance Company, in solido, in the full sum of $741.95; there is further judgment in favor of plaintiff, Hazel Johnson, as tutrix of the minor child, Jimmy Pharr, and against the defendants, Zolon Stiles and Horace Mann Mutual Insurance Company, in solido, in the full sum of $1000.00; the judgment in favor of Harold Newsom rejecting the demands of the plaintiffs is affirmed; the defendants, Zolon Stiles and Horace Mann Mutual Insurance Company, are cast for all costs, in solido.
BOLIN, Judge (dissenting).
I respectfully dissent from the decree of this court which, in my opinion, overrules a factual finding of the jury.
As correctly pointed out in the opinion, neither appellants nor appellees make an issue of the right of a school teacher to administer corporal punishment. After making this pronouncement our opinion indulged in what I consider to be obiter dicta by discussing Civil Code articles, a statute and several Louisiana appellate court cases which relate to corporal punishment and concludes: "* * * it can hardly be said that parents intend to delegate the authority to administer corporal punishment by the mere fact of sending their child to school". I respectfully submit this portion of our opinion is gratuitous, unnecessary and will tend to cause confusion in our jurisprudence.
The majority finds the punishment administered by Zolon Stiles to Jimmy Pharr was unreasonable because the "whipping given was excessive and unreasonable, if not premeditated, administered for a slight deviation from the normal conduct". Plaintiffs requested a trial by jury and the jury undoubtedly did not believe the punishment was excessive. In my humble opinion the question of whether punishment administered to a 16-year old boy by his physical education teacher is excessive or unreasonable can better be decided by twelve citizens from the parish in which the school is situated than by this court. They saw and observed these witnesses while we have only a record of the proceedings.
However, since it is our constitutional duty to review both the law and facts, I have carefully reviewed the record and have concluded it does not support a finding that Stiles exceeded reasonable standards of punishment in disciplining Jimmy. The pine paddle was less than 20" long, approximately 3" wide and less than ½" thick The student had been warned not to do the very thing he did. He had even been administered one "lick" and told if he persisted in violating the track rules he would be paddled some more. He persisted in his conduct and his teacher did exactly what he told him he would, i. e., paddled him. Stiles says the paddle broke when the boy fell down while trying to pull away from him during the chastisement. I do not think the few additional blows by the broken paddle have any significance. The only premeditation by Stiles was he told Jimmy he would have to use a paddle on him if he did not behave himself.
The principal question in this case is whether this paddling was so severe as to constitute excessive punishment. I do not think appellants proved the paddling in any way caused or contributed to the bruise found behind Jimmy's ear. The evidence satisfies me the student was struck seven or eight times. There were some slight bruises over the region of his buttocks and back. In my opinion they were not severe and were partially caused by Jimmy's trying to pull away from Stiles.
Counsel for appellant says in his brief before this court:
"Clearly, a teacher must have certain disciplinary powers. But he must not *595 abuse those powers. The difficulties on various college campuses result from the pusillanimous leniency of certain cowardly college officials. In the instant case, however, the high school teacher went to the other extreme. Plaintiffs submit that, as a matter of law, the presence of black and blue bruises on the body of a child indicates that unreasonable force was used." (with citation of cases)
While I do not think it is necessary to indict the entire college system, I agree that a teacher must have some disciplinary power and this power should not be abused. However, I cannot agree that, as a matter of law, the appearance of bruises indicates unreasonable force was used. This was a matter for the jury to decide, which they did adversely to appellants, and I think the record supports this verdict.
Conceding arguendo liability has been established, I think the award to Jimmy's mother should be reduced from $741.95 to $14.00. This latter amount was incurred for the only medical treatment found to be necessary for the paddling.
NOTES
[1] "A. Every teacher is authorized to hold every pupil to a strict accountability for any disorderly conduct in school or on the playgrounds of the school, on the street or road while going to or returning from school, or during intermission or recess. School principals may suspend from school any pupil who is guilty of wilful disobedience; who treats with intentional disrespect a teacher, principal, superintendent, member or employee of the local school board; who makes against any one of them an unfounded charge; who uses unchaste or profane language; who is guilty of immoral or vicious practices, or of conduct or habits injurious to his associates; who uses tobacco or alcoholic beverages in any form in school buildings or on school grounds; who disturbs the school and habitually violates any rule; who cuts, defaces or injures any part of public school buildings, or any property belonging to said buildings; or who writes any profane or obscene language or draws obscene pictures in or on any school material or on any public school premises, or on any fence, pole, sidewalk or building on the way to or from school; or who is found carrying firearms, knives, or other implements which can be used as weapons, the careless use of which might inflict harm or injury; or who throws missiles on the school grounds liable to injure other pupils; or who instigates or participates in fights while under school supervision; or who violates traffic and safety regulations; or who leaves the school premises without permission; or who leaves his class room during class hours or detention without permission; or who is habitually tardy or absent; or who commits any other serious offense, pending a hearing before the parish superintendent of schools, whose decision on the merits of the case, as well as the term of suspension, shall be final, reserving the right to the superintendent of schools to remit any portion of the time of suspension. A pupil suspended for damages to any property belonging to the school system shall not be readmitted until payment in full has been made for such damage or until directed by the superintendent of schools.

"B. Any student after being suspended on three occasions for committing any of the above offenses, during the same school session, shall on committing the fourth such offense, be expelled from the public schools of the parish wherein he resided until the beginning of the next regular public school session, subject to the review and approval of the local school board."