313 So.2d 349 (1975)
Joseph ROY, Individually and as Administrator of Jimmy Roy, Plaintiff and Appellee,
v.
CONTINENTAL INSURANCE COMPANY, Defendant and Appellee, and
Robert St. Julien and Horace Mann Insurance Company, Defendants and Appellants.
No. 4984.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1975.
Rehearing Denied June 18, 1975.
Writ Refused September 12, 1975.
*350 Voorhies & Labbe, by Patrick A. Juneau, Jr., Lafayette, for defendant-appellant.
John G. Poteet, Jr., Lafayette, for plaintiff-appellee.
Allen, Gooch & Bourgeois, by Michael Harson, Lafayette, for defendant-appellee.
Before FRUGE, CULPEPPER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
The plaintiff, Joseph Roy, Individually and as Administrator of his minor child, Jimmy Roy, filed this suit against Robert St. Julien (a teacher at Paul Breaux School, Lafayette Parish, Louisiana), Continental *351 Insurance Company (insurer of the Lafayette Parish School Board), and Horace Mann Insurance Company (the defendant teacher's liability insurer) seeking to recover damages for injuries allegedly sustained by Jimmy Roy as a result of a "beating" with a wooden paddle by the defendant-teacher. From a judgment in favor of the plaintiff and against Robert St. Julien and Horace Mann Insurance Company, in the sum of $285.00 ($250.00 general damages and $35.00 medical expenses), these defendants have appealed.[1] Plaintiff, in turn, has answered the appeal seeking an increase in the judgment award.
We find the essential facts leading up to this suit to be as follows: On or about October 23, 1972, Jimmy Roy was an 8th grade student at Paul Breaux Elementary School in Lafayette, Louisiana. On this date, at approximately 12 o'clock noon, Roy and another student, Allen Ortte, were in the process of starting a fight on the school grounds when the defendant, Robert St. Julien, a P.E. teacher and coach, separated the two boys and reprimanded them. Apparently as the teacher was walking away to return to his class, the boys began the fracus once again and St. Julien was forced to separate them a second time. On this occasion he apparently grabbed the two boys by their shoulders and threatened to take them to the principal's office. Roy, in turn, cursed St. Julien, calling him a "god-damn son-of-a-bitch" and threatened reprisal by his father. Thereupon St. Julien caught Jimmy Roy by his arm and proceeded to bring the student to his office, with Roy continuously cursing the teacher. Once within the confines of the coach's office, St. Julien admittedly "paddled" Roy and reprimanded him about fighting. St. Julien testified he initially asked Roy to bend over and put his hands on the teacher's desk, which the boy did, and he in turn struck the boy one time on his posterior with a wooden paddle. St. Julien stated that he was then about to let the boy leave when Jimmy Roy cursed him again, so the teacher grabbed him, turned him on his knee and gave him three or four more swats with the paddle. During the second "paddling", St. Julien further stated Roy was struggling, kicking, and swinging.
Roy, on the other hand, testified the teacher struck him about thirteen times and threatened more trouble if the boy reported it.
Upon returning home from school that same afternoon, Roy's mother testified she noticed her son limping, inquired what was the matter, and was shown marks left by the paddling incident. She testified her son had a bruise and black marks (about the size of a grapefruit) on the rear of his right thigh and that his posterior was red and "bloodshot".
The following day she took her son to Doctor Phillip Purpera, a local physician. He testified essentially that he examined the boy and found "some bruises over his buttocks and the back of his right thigh", which were sore and tender to touch. The doctor gave no other description of the extent of injuries, nor was any description sought by counsel. He also revealed that he took x-rays of the leg and hip, but as indicated in his testimony, only as a precautionary measure.[2] The doctor further *352 indicated that there was a little soreness approximately a week following the initial examination.
The specific question of whether a teacher has the right to use corporal punishment in the process of enforcing discipline in our schools has never been answered by the appellate courts of this state.[3] There are, however, three very closely related decisions[4] in which the issue (if raised) was intentionally avoided with our courts on each occasion finding in effect that, assuming corporal punishment was permitted, the amount imposed in each specific instance was excessive and unreasonable.
In the instant case this Court might likewise have chosen to follow the approach of the former jurisprudence, if we had reached the conclusion that an affirmance of the district court holding (to the effect that the punishment imposed herein by Robert St. Julien on Jimmy Roy was unreasonable) was in order. A review of the record, however, (as reflected in the opinion and discussed hereinafter) bring this court to conclude that the holding of the trial court was incorrect. As a result, even though no contention is made that corporal punishment is not allowed under Louisiana law, this Court is faced at the outset with making a legal determination of whether this type of discipline, in any manner, is permitted.
It is clear that no Louisiana statute explicitly establishes the right of a teacher to use corporal punishment. There are, however, related statutes which are relevant to the question raised herein.
LSA R.S. 17:416 provides that "Every teacher is authorized to hold every pupil to a strict accountability for any disorderly conduct in school, or on the playgrounds of school . . ." The only provision, however, in the statute relating to punishment gives suspension and expulsion authority and lists those acts which can result in such discipline. Said acts include willful disobedience, intentional disrespect to a teacher, use of profane language, and instigation of or participation in fights. There is no question but that the statute does not provide for corporal punishment, but then neither does it prohibit same, nor indicate that a less severe action (i. e. corporal punishment rather than suspension or expulsion) might not be taken against an infraction of the rules and regulations.
Article 220 of the Louisiana Civil Code also provides in part:
"Fathers and mothers may, during their life, delegate a part of their authority to teachers, schoolmasters and others to whom they intrust their children for their education, such as the power of restraint and correction, so far as may be necessary to answer the purposes for which they employ them."
La. 635, 197 So.2d 653 (1967).
Although the language in the article is permissive (i. e. "may") this provision arguably indicates that the conferred power of restraint and correction could include the use of corporal punishment, "TortsCorporal Punishment in Public Schools", 14 Loyola Law Rev. 288 (1967).
There is also a provision in our Louisiana Criminal Code (LSA R.S. 14:18) which, although phrased in the negative, indicates that reasonable physical discipline of students by teachers (which includes corporal punishment) is at least implicitly recognized in Louisiana. The statute reads in pertinent part:
"The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. *353 This defense of justification can be claimed under the following circumstances:
. . . . . .
(4) When the offender's conduct is reasonable discipline of minors by their parents, tutors or teachers; or. . ."
The only "criminal" conduct coming to mind that would fall under this provision, as applied to teachers in the act of disciplining students, would be assault and/or battery, by reason of some type of corporal punishment.
Apart from statute, however, reasonable corporal punishment of pupils by school teachers has been traditionally used and permitted in schools, apparently from their very establishment. Likewise, it is obviously used in many school systems today.[5] This is not to say that at present there is not some difference of opinion among "experts" in the educational field as to the pros and cons of using this form of discipline.
Our federal courts[6] have consistently held that such punishment, reasonably imposed, was not violative of certain constitutional rights, including due process, equal protection, and prohibition against cruel and unusual punishment.
There is also no doubt but that a school board has the power to enact necessary regulations for the conduct of its students and the orderly control of activities in the classroom, including methods of enforcement.[7] Tinker v. Des Moines School District, 393 U.S. 503, 524, 89 S.Ct. 733, 746, 21 L.Ed.2d 731 (1969). Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).
It is also a well established rule in general tort law that a teacher is immune from civil liability for physical corporal punishment, reasonable in degree, administered to a student. But it is likewise clear under tort law that this discretionary right of a teacher to use physical punishment is a limited one and immunity or privilege from liability requires a showing that said punishment was administered neither unreasonably nor excessively, measured in part by such factors as the nature of the punishment itself, the misconduct of the child, the teacher's motive in the discipline, and the age and physical condition of the pupil. The question of "reasonableness" or "excessiveness" is determined on a case by case basis. 43 A.L.R.2d 469, TeacherPunishment of Pupil (1955); 68 Am.Jr.2d § 258, Schools; 79 C.J.S. Schools and School Districts § 502; Restatement, Torts, 2d § 147.
The courts of this state (although as aforementioned, never holding that corporal punishment was per se allowed) have likewise adhered to the "excessive" and "unreasonable" standard when confronted with alleged liability on the part of a teacher who has inflicted corporal punishment.
The use of corporal punishment as discipline by teachers apparently stems from the age old principle that a schoolmaster is regarded as standing in "loco parentis", or in the shoes of a parent while the child is attending school, and as a result shares in the right to demand and obtain obedience from the student. Thus parental authority has been deemed to be delegated to the teacher. Insofar as the type or form of discipline is concerned, it must be conceded that parents have the right to inflict corporal punishment upon their children, subject of course to the limitation of jeopardizing the health or safety of the child. This court is of the opinion *354 that teachers likewise have this limited right. Without doubt, some children of school age are immature, undisciplined, rebellious, and have a self-serving inability to recognize the necessity for regulation. As a result disruptive conduct often occurs. A teacher has the duty of maintaining discipline and good order in our schools, in addition to being responsible for the progress, conduct, and education of our children. In order for these educators to discharge this duty and maintain orderly conduct of activities in the classroom and on the school grounds, we opine they must be given the means of enforcing prompt discipline, one such means being reasonable corporal punishment. A general rule to the negative, insofar as corporal punishment is concerned would in our minds "encourage students to flaunt the authority of their teachers",[8] and effectively shackle the teaching profession at a time of rising disciplinary problems in our schools.
In order, at this time, is a comment by the late United States Supreme Court Justice Black, dissenting in Tinker v. Des Moines School District, supra:
"Change has been said to be truly the law of life but sometimes the old and the tried and true are worth holding. The schools of this Nation have undoubtedly contributed to giving us tranquility and to making us a more law-abiding people. Uncontrolled and uncontrollable liberty is an enemy to domestic peace. We cannot close our eyes to the fact that some of the country's greatest problems are crimes committed by the youth, too many of school age. School discipline, like parental discipline, is an integral and important part of training our children to be good citizensto be better citizens."
Considering the foregoing we opine and so hold that corporal punishment, reasonable in degree, administered by a teacher to a pupil for disciplinary reasons, is permitted in Louisiana.
Thus the only remaining question is whether under the particular facts and circumstances herein the punishment imposed was excessive or unreasonable. We opine that it was not.
As aforementioned, the courts of this state have held on three occasions that the corporal punishment administered under the facts of each of the respective cases, by a teacher to a student, was excessive and unreasonable. In light of our holding herein, to the opposite effect, we will examine the facts of each of those cases.
In Houeye v. St. Helena Parish School Board, 223 La. 966, 67 So.2d 553 (1953) a 12-year old student was whipped by a teacher with a "sash cord", about 18 inches long, for allegedly being absent from school without permission. Testimony indicated the boy was black, blue, and bloodshot on almost the entire area of the buttocks and legs from the waist down, extending about 12 inches. The boy's mother gave testimony to the effect that it took almost three weeks before her son's skin was cleared up to normal. Several School Board members gave statements such as: "he was as bad a whipped chap as I ever saw, if not a little worse than I ever saw. . . it was as black as it could be. Way down his legs, you couldn't cover it with your two hands . . ."; "I would call it awful. It was the worst whipped kid I ever seen . . . He was just blue. . . all purple." Another Board Member indicated "that in all of his school experience he had never seen a child whipped so badly."
Frank v. Orleans Parish School Board, 195 So.2d 451 (La.App.4th Cir. 1967), writ refused 250 La. 635, 197 So.2d 653 (1967) involved a physical reprimand given by a P.E. teacher to a 14-year-old student who refused to participate in conformity with his instructions. The Court found that the teacher "lifted the boy from the ground, shook him in anger and then dropped him to the floor." As a result the minor sustained a broken arm.
The latest Louisiana decision on this question is Johnson v. Horace Mann Mutual *355 Ins. Co., 241 So.2d 588 (La.App.2d Cir. 1970). In Johnson the Court found that a physical education student was whipped excessively and unreasonably by his teacher for only a slight deviation from the required normal conduct, i. e. for not lining up and starting properly for a foot racing event. The Court indicated bruises were found on the boy behind the right ear, the left shoulder, and the left buttock and thigh; that the teacher struck him 6 or 7 times; and that in the process the paddle which was used became broken. There was also an inference by the majority of the court that the whipping was possibly premeditated.[9]
In each of the foregoing cases the facts clearly justify a conclusion that the punishment imposed was "excessive" or "unreasonable". The instant case can be readily distinguished. Herein, Jimmy Roy was participating in a fight, continued to do so after Robert St. Julian (a teacher) ordered him to do otherwise, and then when physically separated began to openly curse the teacher. Under the aforementioned LSA R.S. 17:416, the student could have been suspended or expelled for such conduct. Instead the teacher, in his discretion, chose a less severe measure, id est "paddling".
The paddle used in the punishment was made of wood, approximately 14 or 15 inches long, about 6 inches wide, and possibly ½ inch thick. The teacher testified the principal had such a paddle made for every male teacher at the school and told them to maintain discipline. St. Julien stated that he struck or "swatted" the boy a total of 4 or 5 times with the board.
The medical testimony in no way indicates that the striking of Jimmy Roy with the paddle injured the boy. It does reveal that his buttocks and back of right thigh evidence "some" bruises and that the area was sore and tender to touch for a few days. There is no indication whatsoever the doctor felt that the bruises were severe. In fact Doctor Purpera's testimony as a whole indicates to this court that he was of the opposite opinion.
The bruises sustained on the posterior of the plaintiff's son are clearly indicative of what this Court would expect from being struck with the aforementioned "paddle". It seems clearly evident that a "swat" or "hit" on one's posterior, with a wooden paddle, using any degree of force, would cause slight bruising. The reason for the discipline was to reprimand the child. The resulting transitory pain and insignificant bruising does not in our opinion make such punishment severe. The blow causing the bruise on the rear of Jimmy Roy's leg, on the other hand, was likely administered, as indicated in the testimony of St. Julien, unintentionally when the student was struggling and fighting his teacher to prevent further punishment.
If this set of circumstances can be considered as evidencing "excessive" or "unreasonable" corporal punishment, this Court cannot visualize a situation, in which any bruises are sustained during such punishment, that would be permitted. Likewise, if we were to affirm the district court judgment, we would in our opinion be establishing an absolute rule against corporal punishment. This we choose not to do.
For the above and foregoing reasons the judgment of the trial court is reversed, insofar as it held Robert St. Julien and Horace Mann Insurance Company liable, and it is hereby ordered, adjudged, and decreed that judgment be rendered in favor of the defendants, dismissing plaintiff's suit at his costs, both at trial and on appeal. The judgment is affirmed in all other respects.
Affirmed in part, reversed in part, and rendered.
NOTES
[1] Continental Insurance Company was released in the trial court judgment of any liability in this suit. No reasons were given by the district judge in this respect. However, there is no contention by the parties herein on appeal that this insurance company should be held liable in any manner.
[2] Pertinent on this point is the following testimony by Doctor Purpera:

Q. Did you feel that the beating was so severe x-ray were indicated?
A. Well, that's a good question. A lot of x-rays are taken for medical-legal purposes and at this time I really don't think the kid came in maimed or anything. Judge, we are getting into a medical-legal thing here; we take a lot of x-rays today that we wouldn't have taken twenty-thirty years ago.
By the Court: You can state why you took the x-rays. In other words, as a precautionary measure to be sure there were no other injuries, is that correct?
A. Yes, sir.
[3] But see: Opinion of the Attorney General 1934-36, at p. 221 and Opinion of the Attorney General 1940-42 at 3493 indicating a belief that corporal punishment could be administered by a teacher for any crime based on that conduct.
[4] Houeye v. St. Helena Parish School Bd., 223 La. 966, 67 So.2d 553 (1953); Johnson v. Horace Mann Mutual Ins. Co., 241 So.2d 588 (La.App.2nd Cir. 1970); Frank v. Orleans Parish School Board, 195 So.2d 451 (La.App.4th Cir. 1967), writ refused 250
[5] See: Ingraham v. Wright, 498 F.2d 248, 260 (5th Cir. 1974) and footnote 23.
[6] Ingraham v. Wright, 498 F.2d 248 (5th Cir.1974); Ware v. Estes, 328 F.Supp. 657 (N.D.Tex.1971), aff'd per curiam 458 F.2d 1360 (5th Cir. 1972); writ denied 409 U.S. 1027, 93 S.Ct. 463, 34 L.Ed.2d 321 (1972); Glaser v. Marietta, 351 F.Supp. 555 (W.D. Pa.1972); Sims v. Board of Education of Independent Sch. Dist. No. 22, 329 F.Supp. 678 (D.N.M.1971).
[7] The record reflects that at the time of the incident herein the Lafayette Parish School Board permitted the use of corporal punishment as a disciplinary measure.
[8] Frank v. Orleans Parish School Board, 195 So.2d 451 at 454 (La.App.4th Cir. 1967).
[9] Other instances of excessive and unreasonable corporal punishment are found in other jurisdictions. See: City of Macomb v. Gould, 104 Ill.App.2d 361, 244 N.E.2d 634 (1969) teacher struck student on face with fist and flat of his hand; Calway v. Williamson, 130 Conn. 575, 36 A.2d 377 (1944) principal pushed pupil to floor kneeling on pupil's abdomen, and student sustained abrasions on forehead developing into ostemyelitis.